No. 23-____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

IN RE COINBASE, INC., PETITIONER

## COINBASE, INC.'S PETITION FOR WRIT OF MANDAMUS
## TO THE UNITED STATES SECURITIES AND EXCHANGE
## COMMISSION

Reed Brodsky
Lefteri J. Christos
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
(212) 351-4000

Monica K. Loseman
Nicholas B. Venable
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Unit 4200
Denver, CO  80202
(303) 298-5700

Eugene Scalia
  *Counsel of Record*
Jonathan C. Bond
Nick Harper
Robert A. Batista
M. Christian Talley
John N. Reed
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
EScalia@gibsondunn.com

*Counsel for Petitioner Coinbase, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION .........................................................................................1

ISSUE PRESENTED ....................................................................................6

JURISDICTION AND VENUE ....................................................................6

STATEMENT ...............................................................................................6

ARGUMENT ..............................................................................................15

      THE SEC HAS DEFAULTED ON ITS DUTY TO ACT ON COINBASE'S
      PETITION EVEN WHILE ATTEMPTING TO ENFORCE ITS UNLAWFUL
      POSITION.....................................................................................................16

          A.    The SEC's Refusal To Act On Coinbase's Petition After
                Having Made Its Decision Is An Unreasonable Evasion
                Of Judicial Review...................................................................17

          B.    Judicial Precedent Addressing Agency Delay Confirms
                That The SEC's Inaction Is Unreasonable...............................18

CONCLUSION ...........................................................................................22

CERTIFICATIONS

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Am. Rivers & Idaho Rivers United,*
372 F.3d 413 (D.C. Cir. 2004) ...............................................................5, 16, 18

*In re Core Commc'ns, Inc.,*
531 F.3d 849 (D.C. Cir. 2008) ..........................................................................19

*Cutler v. Hayes,*
818 F.2d 879 (D.C. Cir. 1987) .....................................................................20, 21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) ............................................................................................21

*NLRB v. Bell Aerospace Co. Div. of Textron,*
416 U.S. 267 (1974) ..........................................................................................21

*Oil, Chem. & Atomic Workers Union v. OSHA,*
145 F.3d 120 (3d Cir. 1998) .............................................6, 16, 17, 18, 19, 20

*Prometheus Radio Project v. FCC,*
824 F.3d 33 (3d Cir. 2016) .........................................................................16, 18

*Pub. Citizen Health Rsch. Grp. v. Chao,*
314 F.3d 143 (3d Cir. 2002) .............................................................................19

*In re Pub. Emps. for Env't Responsibility,*
957 F.3d 267 (D.C. Cir. 2020) ..........................................................................19

*Suttle v. Reich Bros. Constr. Co.,*
333 U.S. 163 (1948) ............................................................................................6

*Telecomms. Rsch. & Action Ctr. v. FCC,*
750 F.2d 70 (D.C. Cir. 1984) .....................................................................18, 22

STATUTES

5 U.S.C. § 553(e) ...................................................................................................16

5 U.S.C. § 555(b) ...............................................................................16, 17

5 U.S.C. § 706(1) ...........................................................................5, 16, 18

15 U.S.C. § 77i .........................................................................................6

15 U.S.C. § 77i(a) ....................................................................................6

15 U.S.C. § 78e ........................................................................................8

15 U.S.C. § 78y ........................................................................................6

15 U.S.C. § 78y(a)(1) ...............................................................................6

28 U.S.C. § 1651 ......................................................................................6

**REGULATIONS**

17 C.F.R. § 201.192(a) ...........................................................................16

**OTHER AUTHORITIES**

Brian Armstrong, *Coinbase Is a Mission Focused Company*,
   Coinbase Blog (Sept. 27, 2020),
   https://bit.ly/3kkEHfT .......................................................................7

Coinbase, Petition for Rulemaking (July 21, 2022),
   https://bit.ly/3lZ7dUH .....................................................................13

Chelsey Cox, *Cryptocurrency Firms Need to 'Come into Compliance'*
   *with Existing Rules, SEC Chair Gary Gensler Says*, CNBC (Dec. 7, 2022),
   https://cnb.cx/3y1dNNh ....................................................................12

Rachel Louise Ensign, *Banks Are Breaking Up With Crypto During*
   *Regulatory Crackdown*, Wall St. J. (Feb. 16, 2023),
   https://on.wsj.com/3G8hCEG ...........................................................22

*Framework for "Investment Contract" Analysis of Digital Assets*,
   SEC (Apr. 3, 2019),
   https://bit.ly/2HXfEdZ ......................................................................9

*Game Stopped?  Who Wins and Loses When Short Sellers, Social Media,*
   *and Retail Investors Collide*, Part III, 117th Cong. 1 (May 6, 2021),
   https://bit.ly/3n5vgSH .....................................................................2, 9

Gary Gensler, SEC Chair, *Kennedy and Crypto* (Sept. 8, 2022),
    https://bit.ly/3XWAkoQ ......................................................10

Gary Gensler, SEC Chair, *Prepared Remarks of Gary Gensler on
    Crypto Markets* (Apr. 4, 2022),
    https://bit.ly/41azGqb ......................................................13

Gary Gensler, SEC Chair, *Testimony of Chair Gary Gensler Before
    the United States House of Representatives
    Committee on Financial Services* (Apr. 18, 2023),
    https://bit.ly/43K8IYa ......................................................10

Katie Haun, *How U.S. Regulators Are Choking Crypto*,
    Wall St. J. (Mar. 27, 2023),
    https://on.wsj.com/40KMTp8 ...........................................22

William Hinman, Dir., Div. of Corp. Fin., SEC, *Digital Asset Transactions:
    When Howey Met Gary (Plastic)* (June 14, 2018),
    https://bit.ly/2l8t5dB ........................................................8

Matt Levine, *The SEC is Coming for Coinbase*, Bloomberg Opinion:
    Money Stuff (Mar. 23, 2023),
    http://bit.ly/3ZgMCZP ......................................................11

Ouisa Capital, Rulemaking Regarding Digital Assets (Mar. 13, 2017),
    https://bit.ly/3KKjcQg .....................................................10

*Oversight of the Securities and Exchange Commission*,
    118th Cong., 1st Sess. (Apr. 18, 2023),
    https://bit.ly/3MRHRna ....................................................11

Hester Peirce, Comm'r, SEC, *Outdated: Remarks before the
    Digital Assets at Duke Conference* (Jan. 20, 2023),
    https://bit.ly/3YWPSKO ...............................................11, 12

Hester Peirce, Comm'r, SEC, *Rendering Innovation Kaput:
    Statement on Amending the Definition of Exchange* (Apr. 14, 2023),
    https://bit.ly/43SfmMd.....................................................15

Kate Rooney, *Congress Members Ask SEC Chairman for Clarity
    on Cryptocurrency Regulation*, CNBC (Sept. 28, 2018),
    https://bit.ly/3ENmM8G ...................................................10

SEC, *Correspondence Related to Draft Registration Statement*
(Dec. 7, 2020),
https://bit.ly/3lRrY4y ........................................................................9

*SEC's Gensler: The 'Runway Is Getting Shorter' for Non-Compliant
Crypto Firms*, Yahoo (Dec. 7, 2022),
https://yhoo.it/3EJrqo1 ..................................................................2, 10

SEC Press Release 2023-77,
https://bit.ly/41oz9B9 ......................................................................14

U.S. Chamber of Commerce, Capital Markets Competitiveness,
*Digital Assets: A Framework for Regulation to Maintain the
United States' Status as an Innovation Leader* (Jan. 2021),
https://bit.ly/3EuhQ8v......................................................................10

*We Asked the SEC for Reasonable Crypto Rules for Americans.
We Got Legal Threats Instead*, Coinbase Blog (Mar. 22, 2023),
https://bit.ly/3ndWJBE .....................................................................14

*What Is a Blockchain?*, Coinbase,
https://bit.ly/3ICTlY1 .........................................................................7

*What Is Bitcoin?*, Coinbase,
https://bit.ly/3SCqw2p .........................................................................7

*What Is Ethereum?*, Coinbase,
https://bit.ly/3lOvJIE.............................................................................7

**INTRODUCTION**

Coinbase, Inc. operates the largest cryptocurrency trading platform in the United States. It is the only publicly traded crypto platform in the country, with investors that include some of the nation's most respected financial institutions. Digital assets themselves, such as those that Coinbase lists, are a mainstream part of global financial markets, with a market capitalization of around $1 trillion and hundreds of millions of users around the world.

Coinbase brings this mandamus action to seek modest, but meaningful and time-sensitive, relief: a writ requiring the Securities and Exchange Commission (SEC or Commission) to act on Coinbase's pending rulemaking petition to provide clarity for the crypto industry. Coinbase does not ask the Court to instruct the agency *how* to respond. It simply requests that the Court order the SEC to respond at all. The Commission has repeatedly demonstrated that its mind is made up to deny the petition. But the Commission's delay in formally announcing that decision has enabled it to improperly delay judicial review at a critical moment for the industry.

Digital assets themselves are not new—the first blockchain, Bitcoin, was launched in 2009. For many years, the Commission offered sparse guidance on its view of the applicability of the securities laws in this area. Its words and actions signaled (if anything) that the securities laws do not apply to many digital assets. In 2018, a senior SEC official stated that a digital asset "all by itself" is not a security

that requires registration with the SEC.  In April 2021, the SEC cleared the way for Coinbase to become a public company without any indication that Coinbase needed to register with the Commission.  And in May 2021, the SEC Chair testified before Congress that "the exchanges trading in these crypto assets do not have a regulatory framework either at the SEC, or our sister agency, the Commodity Futures Trading Commission . . . .  Right now, there is not a market regulator around these crypto exchanges."[1]

More recently, however, the SEC abruptly began signaling a different stance, which has created disruptive uncertainty throughout the industry.  Contrary to the prior actions and statements of the Commission and its officials, the SEC Chair now claims that it is "clear" the securities laws already apply to digital assets and plat-forms.  In December 2022, for example, the Chair said:  "I feel that we have enough authority, I really do, in this space" to require crypto companies "to come into com-pliance" with the Commission's registration requirements.[2]  The Chair reiterated this position just last week before Congress.  Yet the Commission still has not engaged in any rulemaking to set forth its view on *which* digital assets must be registered as securities or *how* the registration and other requirements designed decades ago for

---

[1] *Game Stopped?  Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide*, Part III, 117th Cong. 1 (May 6, 2021), https://bit.ly/3n5vgSH.

[2] *SEC's Gensler: The 'Runway Is Getting Shorter' for Non-Compliant Crypto Firms*, Yahoo (Dec. 7, 2022), https://yhoo.it/3EJrqo1.

traditional securities apply to digital assets.  Instead, the SEC has signaled that momentous shift in its position through speeches, television interviews, and the like—and increasingly through a campaign of enforcement actions that has become even more aggressive in recent months.

To be clear, the Commission's revisionist reading of the securities laws is wrong.  It has no foundation in the securities laws' text and settled principles of statutory interpretation.  And the Commission's attempt to foist its new view onto the industry in this manner violates bedrock principles of due process and administrative law.  But even if the Commission's skewed interpretation of the statutes were sound, the Commission still would have to provide a path for the registration of digital assets that the agency now believes is required.  It is widely recognized—including by a sitting SEC Commissioner—that existing SEC registration and disclosure requirements are incompatible with digital assets, which differ fundamentally from the stocks, bonds, and investment contracts for which the securities laws were designed and that the SEC traditionally has regulated.  The SEC at a minimum must set forth how those inapt and inapposite requirements are to be adapted to digital assets.  But the SEC has refused to do even that.  It has not conducted any rulemaking to provide the regulatory clarity and process that companies need to determine *which* digital asset products and services to register and *how* to make the registration that the SEC now demands.

Seeking a productive solution to this regulatory impasse, in July 2022 Coinbase petitioned the SEC to initiate just such a rulemaking. Rulemaking exists so that agencies can provide prospective notice of their understanding of the law with the benefit of public input, and have their position tested through judicial review. More than 1,700 other organizations and individuals have submitted comments echoing that call for clarity. Coinbase has followed up repeatedly with more specific suggestions for the Commission to consider. To this day, the SEC has not responded.

Instead, the Commission has escalated its enforcement efforts and sought significantly more funding from Congress to do so. Most recently it has attempted to intimidate Coinbase itself. Just last month, the Commission issued a "Wells notice" to Coinbase, indicating that SEC Staff plan to recommend enforcement action. On what ground? For supposedly failing to make the registration (for unspecified aspects of Coinbase's business) that the Commission newly claims is necessary, but which it has refused to make possible through rulemaking. Thus, the SEC refuses to address Coinbase's rulemaking petition that is the subject of this action—which asks the Commission to explain which digital assets should be registered and how such a registration process could work—even while the agency avows its intent to initiate enforcement proceedings against Coinbase for listing allegedly unregistered securities.

The SEC's refusal to respond to Coinbase's rulemaking petition is, in the parlance of the Administrative Procedure Act (APA), "agency action" that has been "unreasonably delayed." 5 U.S.C. § 706(1). Coinbase brings this mandamus action to compel the SEC to do one simple thing: state on the record whether or not it will initiate proceedings to establish the ground rules that it has charged others and may soon charge Coinbase with failing to follow. The APA requires the Commission to take that simple step. Moreover, all of the Commission's actions suggest it has already decided internally to deny Coinbase's petition, and is simply withholding a formal decision from Coinbase and the public, with the effect (and perhaps intent) of frustrating judicial review. But Coinbase and the crypto industry have an urgent right to a judicially reviewable decision, especially when facing unlawful, arbitrary, and capricious threats of enforcement from the Commission on the very same issue in the interim.

Mandamus is tailor-made for this scenario. "[T]he primary purpose of the writ in circumstances like these is to ensure that an agency does not thwart [courts'] jurisdiction by withholding a reviewable decision." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004). The SEC's silence in response to the petition, left unchecked, would thwart judicial review in precisely that fashion. The Court should not permit the SEC to pocket veto Coinbase's rulemaking request.

**ISSUE PRESENTED**

Whether a writ of mandamus should issue under the All Writs Act, 28 U.S.C. § 1651, directing the SEC to act on Coinbase's rulemaking petition within 7 days.

**JURISDICTION AND VENUE**

This Court has jurisdiction over mandamus petitions alleging unreasonable agency delay whenever a statute commits review of the relevant action to the courts of appeals. *Oil, Chem. & Atomic Workers Union v. OSHA*, 145 F.3d 120, 123 (3d Cir. 1998). The "relevant action" here is an SEC order on Coinbase's petition for rulemaking. Because the Securities Act of 1933 (Securities Act) and Securities Exchange Act of 1934 (Exchange Act) make such orders reviewable directly in the courts of appeals, 15 U.S.C. §§ 77i, 78y, this Court has jurisdiction to compel the SEC to decide the petition. Venue is proper in this Court because Coinbase is incorporated in Delaware and thus "reside[s]" in the Third Circuit. *See id.* §§ 77i(a), 78y(a)(1); *Suttle v. Reich Bros. Constr. Co.*, 333 U.S. 163, 166 (1948).

**STATEMENT**

1.      Cryptocurrencies are digital assets whose transactions are recorded and verified on a public blockchain.[3]  A blockchain is a computer program ("protocol")

---

[3] For simplicity, this brief uses the terms "cryptocurrencies" and "digital assets" interchangeably.

that publicly records cryptocurrency transactions on the Internet.[4]  A blockchain is typically decentralized—*i.e.*, no single person or entity operates the blockchain.

The Bitcoin protocol, launched in 2009, was the first blockchain.[5]  It allows anyone with an Internet connection to transfer the bitcoin cryptocurrency to any third party without the need for a centralized clearinghouse, like a bank.  Many other blockchains and digital assets have been created since, with capabilities well beyond peer-to-peer transfers.[6]

2.    Coinbase is the largest and only publicly traded cryptocurrency trading platform in the United States, serving millions of Americans.[7]  It was founded in 2012 to bring economic freedom worldwide by creating a more open, inclusive, and efficient financial system leveraging digital assets and blockchain technology.[8]

Coinbase has built its business in painstaking compliance with all applicable laws, including the federal securities laws.  The Securities Act and Exchange Act encompass transactions involving "securities."  Under the Exchange Act, businesses

---

[4] *What Is a Blockchain?*, Coinbase, https://bit.ly/3ICTlY1.

[5] *What Is Bitcoin?*, Coinbase, https://bit.ly/3SCqw2p.

[6] *What Is Ethereum?*, Coinbase, https://bit.ly/3lOvJIE.

[7] Coinbase's parent company, Coinbase Global, Inc., serves tens of millions more worldwide through distinct, non-U.S. entities.

[8] *See* Brian Armstrong, *Coinbase Is a Mission Focused Company*, Coinbase Blog (Sept. 27, 2020), https://bit.ly/3kkEHfT.

offering securities for sale generally must register with the SEC as national securities exchanges (or as an "alternative trading system"). *See* 15 U.S.C. § 78e. Coinbase has not registered with the SEC as a national securities exchange or alternative trading system because *none* of the digital assets it lists are securities.[9]

      3.     The SEC has never provided definitive guidance on whether and how, in its view, the securities laws apply to digital assets. For many years, it suggested that many digital assets would *not* be considered securities by the SEC. In a 2018 speech, its then-Director of Corporation Finance stated that a digital asset "all by itself is *not* a security."[10] In April 2021, the SEC cleared the way for Coinbase to become a public company after reviewing and commenting on Coinbase's business model without ever suggesting that Coinbase needed to register with the SEC. And in May 2021, the SEC Chair testified before Congress that "the exchanges trading in these crypto assets do not have a regulatory framework either at the SEC, or our

---

[9] *See* Coinbase Amicus Br. 9–17, *SEC v. Wahi*, No. 22-cv-1009, Dkt. 104 (W.D. Wash. Apr. 3, 2023).

[10] *See* William Hinman, Dir., Div. of Corp. Fin., SEC, *Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018), https://bit.ly/2l8t5dB (emphasis added).

sister agency, the Commodity Futures Trading Commission [(CFTC)] . . . .  Right now, there is not a market regulator around these crypto exchanges."[11]

At other times, the SEC has acknowledged a lack of clarity.  In reviewing Coinbase's public-offering disclosures in 2020, for example, SEC Staff stated that there is "no certainty" about whether most digital assets are securities, which made sense given the Chair's contemporaneous admission that the Commission lacks statutory authority.[12]  Even earlier, in 2019, a division of the SEC had published a "Framework" that proposed a *60-factor* analysis for determining whether a digital asset may be a security—muddled, omnidirectional guidance that Coinbase and others in the industry, out of an abundance of caution, have nevertheless done their best to follow in determining which digital assets to list.[13]  Faced with this uncertainty

---

[11] *Game Stopped?  Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide*, Part III, 117th Cong. 1 (May 6, 2021), https://bit.ly/3n5vgSH.

[12] SEC, Correspondence Related to Draft Registration Statement 4 (Dec. 7, 2020), https://bit.ly/3lRrY4y; *Game Stopped?  Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide*, Part III, 117th Cong. 1 (May 6, 2021), https://bit.ly/3n5vgSH.

[13] *Framework for "Investment Contract" Analysis of Digital Assets*, SEC (Apr. 3, 2019), https://bit.ly/2HXfEdZ.

for several years now, the industry and policymakers have repeatedly implored the SEC to provide clarity through rulemaking.[14]  Yet the Commission still has not acted.

4.    More recently, the SEC has abruptly adopted a more hostile posture toward digital assets.  The SEC Chair now repeatedly states that the "vast majority" of cryptocurrencies "are securities" and that he "feel[s] that we have enough author-ity . . . in this space."[15]  The Commission, however, has never codified that apparent position in regulations.  Instead, the SEC Chair has asserted that developers of digital assets and digital asset platforms must "come in and register" under penalty of the agency's "continu[ing] on the course with more enforcement actions."[16]  The Chair reiterated this new position before Congress just last week:  "We have a clear regu-latory framework built up over 90 years.  It's just a bunch of [crypto] intermediaries

---

[14] *See, e.g.*, Ouisa Capital, Rulemaking Regarding Digital Assets (Mar. 13, 2017), https://bit.ly/3KKjcQg; Kate Rooney, *Congress Members Ask SEC Chairman for Clarity on Cryptocurrency Regulation*, CNBC (Sept. 28, 2018), https://bit.ly/3ENmM8G; U.S. Chamber of Commerce, Center for Capital Markets Competitiveness, *Digital Assets: A Framework for Regulation to Maintain the United States' Status as an Innovation Leader* 4–6, 53 (Jan. 2021), https://bit.ly/3EuhQ8v.

[15] *See, e.g.*, Gary Gensler, SEC Chair, *Kennedy and Crypto* (Sept. 8, 2022), https://bit.ly/3XWAkoQ; *SEC's Gensler: The 'Runway Is Getting Shorter' for Non-Compliant Crypto Firms*, Yahoo (Dec. 7, 2022), https://yhoo.it/3EJrqo1; Gary Gensler, SEC Chair, *Testimony of Chair Gary Gensler Before the United States House of Representatives Committee on Financial Services* (Apr. 18, 2023), https://bit.ly/43K8IYa.

[16] *SEC's Gensler: The 'Runway Is Getting Shorter' for Non-Compliant Crypto Firms*, Yahoo (Dec. 7, 2022), https://yhoo.it/3EJrqo1.

in this market that think they have a choice. They don't have a choice. . . . [T]hey need to come into compliance."[17] True to the Chair's threats, the agency is pursuing an aggressive enforcement campaign—a campaign that has accelerated in recent months.

5.    As Coinbase has explained elsewhere, the Commission's new understanding of the securities laws distorts the statutory text, and its regulate-by-enforcement approach transgresses due process and fair notice and violates the APA. *See* Coinbase Amicus Br. 9–27, *SEC v. Wahi*, No. 22-cv-1009, Dkt. 104 (W.D. Wash. Apr. 3, 2023). But even under the Commission's view, the agency must provide a path for registering digital assets.

Yet, as an SEC Commissioner and others have recognized, it is not even feasible to require crypto developers and platforms to meet current SEC registration, disclosure, and listing requirements, which were designed decades ago for entirely different financial instruments.[18] Among other problems, digital assets, unlike stocks, bonds, or investment contracts, are actively used to engage in transactions and interact with applications on blockchains. If a digital asset itself is registered as

---

[17] *Oversight of the Securities and Exchange Commission* at 4:12:30–58, 118th Cong., 1st Sess. (Apr. 18, 2023), https://bit.ly/3MRHRna.

[18] Hester Peirce, Comm'r, SEC, *Outdated: Remarks before the Digital Assets at Duke Conference* (Jan. 20, 2023), https://bit.ly/3YWPSKO; Matt Levine, *The SEC is Coming for Coinbase*, Bloomberg Opinion: Money Stuff (Mar. 23, 2023), http://bit.ly/3ZgMCZP.

a security, then it often will be impossible for anyone to use it, defeating the point of registration.  As for existing disclosure requirements, an SEC Commissioner recently explained that the agency's "traditional disclosures are designed for traditional corporate entities that typically issue and register equity and debt securities."[19] The focus of existing requirements "on disclosure about companies, their management and their financial results" "poorly fit[s] the decentralized and open-source nature of blockchain-based digital asset[s]."[20]  All of this puts crypto platforms like Coinbase in an impossible position as well:  Even if they could register consistent with the SEC's requirements (and they cannot), there would be no registered digital asset securities for them to list.

For a time, this poor regulatory fit prompted the SEC Chair to raise the prospect of using the agency's exemptive authority to relieve the crypto industry from incompatible securities-law requirements.[21]  The Chair also once recognized the need for the SEC to work together with the CFTC to "consider how best to register

---

[19] Hester Peirce, Comm'r, SEC, *Outdated: Remarks before the Digital Assets at Duke Conference* (Jan. 20, 2023), https://bit.ly/3YWPSKO (quotation marks omitted).

[20] *Id.*

[21] *See, e.g.*, Chelsey Cox, *Cryptocurrency Firms Need to 'Come into Compliance' with Existing Rules, SEC Chair Gary Gensler Says*, CNBC (Dec. 7, 2022), https://cnb.cx/3y1dNNh.

and regulate" digital asset platforms.[22]  As the Chair recognized then, digital asset platforms could not list digital asset commodities (which include some of the most widely used digital assets, such as Bitcoin and Ether) if they registered with the SEC—as the Chair now insists they should—because SEC regulations allow registered platforms to list *only* securities.

6.    Seeking to address these and other problems, Coinbase petitioned the SEC in July 2022 to "propose new rules for the offer, sale, registration, and trading of digital asset securities."[23]  To be explicit, Coinbase does not list digital asset securities on its platform, and the SEC lacks authority to regulate the assets that Coinbase does list.  But Coinbase urged the SEC to establish clear rules of the road in this area so that Coinbase *can* list digital asset securities (such as tokenized stocks).  Such rulemaking also would provide fair notice of the SEC's views to all market participants and facilitate global resolution through consolidated judicial review.

In its rulemaking petition, Coinbase identified several areas that the rulemaking should encompass, including: identification of which digital assets are securities; registration of issuers, exemptions, and mandatory disclosures; and registration of exchanges.  More than a thousand other entities and individuals have filed comments

---

[22] *See* Gary Gensler, SEC Chair, *Prepared Remarks of Gary Gensler on Crypto Markets* (Apr. 4, 2022), https://bit.ly/41azGqb.

[23] Coinbase, Petition for Rulemaking 3 (July 21, 2022), https://bit.ly/3lZ7dUH (Add. 2–33).

echoing Coinbase's call for regulatory clarity.  In December 2022 and March 2023, Coinbase filed supplemental comments reiterating the need for rulemaking and offering more specific suggestions (Add. 34–62).  And over the course of more than 30 meetings in the past year, Coinbase presented multiple potential registration paths that the SEC could consider for any digital assets that are properly subject to registration.

Yet more than nine months (and counting) after Coinbase submitted its original petition, the SEC still has taken no action on Coinbase's petition or provided any feedback on Coinbase's proposals.[24]  Instead, it has ramped up efforts to regulate retrospectively by bringing enforcement actions—and has now threatened one against *Coinbase*.  On March 22, 2023, the SEC served a Wells notice on Coinbase alleging (among other things) that unspecified portions of Coinbase's listed digital assets are unregistered securities—even while the Commission still refuses to address Coinbase's rulemaking petition asking the agency to open a path to registration for digital assets that the Commission believes to be securities.[25]

---

[24] On April 14, 2023, the Commission reopened its exchange registration proposal, but that proposal does not appear to address any of the issues raised in Coinbase's rulemaking petition.  It does not address *which* digital assets the Commission believes to be securities and why, or *how* digital asset issuers and platforms could register with the SEC in order to list digital asset securities (including, for example, how to list digital asset securities alongside digital asset commodities).  *See* SEC Press Release 2023-77, https://bit.ly/41oz9B9.

[25] *We Asked the SEC for Reasonable Crypto Rules for Americans.  We Got Legal Threats Instead*, Coinbase Blog (Mar. 22, 2023), https://bit.ly/3ndWJBE.

Coinbase's good-faith efforts to work cooperatively with the agency, including throughout the Commission's review of Coinbase's public-offering disclosures, have been met with threats of an enforcement action. This response from the Commission illustrates the untenable position in which industry participants now find themselves because of the agency's refusal to engage. As one of the SEC's Commissioners recently explained: "Today's Commission tells entrepreneurs trying to do new things in our markets to come in and register. When entrepreneurs find they cannot, the Commission dismisses the possibility of making practical adjustments to our registration framework to help entrepreneurs register, and instead rewards their good faith with an enforcement action."[26]

## ARGUMENT

The SEC is statutorily required to respond to requests for rulemaking in a reasonable time. The SEC has demonstrated by its words and actions—including a campaign of backward-looking enforcement actions, a recent threatened action against Coinbase, and the SEC Chair's recent testimony to Congress—that it has no intention of conducting rulemaking, as Coinbase has requested. Yet it has nevertheless withheld a formal response to Coinbase's petition. That inaction has the effect of insulating the SEC's refusal to publish rules from the ordinary avenues of judicial

---

[26] Hester Peirce, Comm'r, SEC, *Rendering Innovation Kaput: Statement on Amending the Definition of Exchange* (Apr. 14, 2023), https://bit.ly/43SfmMd.

review—while withholding from the industry the path to registration that the Commission insists be followed.  The writ of mandamus should be granted to break the unlawful logjam.

**THE SEC HAS DEFAULTED ON ITS DUTY TO ACT ON COINBASE'S PETITION EVEN WHILE ATTEMPTING TO ENFORCE ITS UNLAWFUL POSITION**

Mandamus is appropriate where an agency has defaulted on a "clear and indisputable" and "nondiscretionary duty."  *Oil, Chem. & Atomic Workers Union v. OSHA* (*OCAWU*), 145 F.3d 120, 124 (3d Cir. 1998).  In particular, mandamus "typically is the appropriate remedy to agency delay."  *Prometheus Radio Project v. FCC*, 824 F.3d 33, 53 (3d Cir. 2016); *see also* 5 U.S.C. § 706(1).  In fact, "the primary purpose of the writ in circumstances like these is to ensure that an agency does not thwart [courts'] jurisdiction by withholding a reviewable decision."  *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004).

That is precisely the circumstance here.  The APA requires the SEC to act on Coinbase's rulemaking petition "within a reasonable time."  5 U.S.C. § 555(b).  Otherwise, "the right" that the APA expressly confers on any "interested person" to "petition for the issuance, amendment, or repeal of a rule" would be meaningless.  *Id.* § 553(e); *see also* 17 C.F.R. § 201.192(a).  But even while the Commission has made clear that it does not intend to undertake rulemaking, it has not responded.  The Commission's withholding of a judicially reviewable action memorializing its already-completed constructive denial of Coinbase's petition is per se unreasonable.

A.    **The SEC's Refusal To Act On Coinbase's Petition After Having Made Its Decision Is An Unreasonable Evasion Of Judicial Review**

The SEC indisputably has not taken any formal action on Coinbase's rule-making petition.  At the same time, it is mounting an accelerating enforcement campaign against the industry—and now threatens an action against Coinbase—based on supposed failures to comply with the registration requirements that are the subject of Coinbase's rulemaking petition.  The only question this Court need answer is whether the SEC's refusal to act under these circumstances is "unreasonable." *OCAWU*, 145 F.3d at 123; 5 U.S.C. § 555(b).  To ask that question is to answer it.

The SEC has shown by its deeds that it does not intend to engage in rulemaking.  The SEC's Chair has repeatedly asserted—including last week before Congress—that rulemaking is unnecessary because the application of the securities laws to digital assets is already "clear."  *See supra*, at 10–11.  Consistent with that view, the SEC has brought a barrage of enforcement actions.  That regulation-by-enforcement approach is incompatible with promulgating rules in the foreseeable future, because the Commission knows that it could not defensibly seek penalties for violations of its registration requirements if it initiated a rulemaking conceding that those requirements are insufficiently clear or workable.

Despite having chosen to forgo rulemaking in favor of backward-looking enforcement suits, however, the SEC has refused to render a formal decision on

Coinbase's rulemaking petition. The SEC's refusal to pronounce that internal decision precludes judicial review of that decision in the ordinary course. And that appears to be agency's aim—the only conceivable purpose for its complete refusal to respond is to "withhol[d] a reviewable decision." *Am. Rivers*, 372 F.3d at 419. But that kind of pocket veto is impermissible, and it is precisely the kind of maneuver that mandamus exists to prevent. *Id.* Agency foot-dragging that lacks any rational explanation *other* than to insulate the agency's determinations from judicial review is inherently "unreasonabl[e]." 5 U.S.C. § 706(1).

### B.   Judicial Precedent Addressing Agency Delay Confirms That The SEC's Inaction Is Unreasonable

Case law strongly confirms that straightforward conclusion. Courts have identified several nonexhaustive factors to aid in ascertaining whether a particular agency delay is unreasonable. Those factors include the length of the delay, the "reasonableness of the delay . . . in the context of the statute authorizing the agency's action," "the consequences of the agency's delay," and the agency's claims of "administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources." *Prometheus*, 824 F.3d at 39–40 (quoting *OCAWU*, 145 F.3d at 123). Courts also consider whether there is "impropriety lurking behind agency lassitude"—a sufficient, but not a necessary, basis for finding an agency's delay unreasonable. *Telecomms. Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984). Here, those factors

all point to the same answer: The SEC's refusal to respond to Coinbase's petition is unreasonable in light of its demonstrated determination to forgo rulemaking in favor of achieving de facto regulation through retrospective enforcement.

*Length of delay and agency resources.* Several factors this Court and others consider focus collectively on length of the delay viewed in light of the agency's "need to prioritize in the face of limited resources." *OCAWU*, 145 F.3d at 123. "There is no per se rule as to how long is too long to wait for agency action." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quotation marks omitted). Longer delays, for example, might be reasonable when an agency would have to expend significant resources to take the requested action.

Here, however, the SEC needs only to memorialize formally the internal decision it has already made not to engage in rulemaking as Coinbase proposed. That ministerial step would not require the SEC to "reorder [its] priorities." *In re Pub. Emps. for Env't Responsibility*, 957 F.3d 267, 275 (D.C. Cir. 2020). It is unreasonable for the SEC—an agency with over 4,500 employees—to take nine months (and counting) to complete that simple task.

That posture sets this case far apart from others where courts have concluded that agency delays of greater duration did not warrant mandamus relief. Courts have excused longer delays when, for example, the agency faces significant "scientific uncertainty and competing regulatory priorities." *Pub. Citizen Health Rsch. Grp. v.*

*Chao*, 314 F.3d 143, 151 (3d Cir. 2002) (describing *OCAWU* decision).  But Coin-base is unaware of any case where a court approved an agency's months-long refusal to memorialize its decision to forgo rulemaking evidenced by the agency's simultaneous pursuit of an aggressive enforcement campaign seeking to impose substantial penalties.  It is not the length of the SEC's delay in isolation that renders its inaction here unreasonable, but its refusal to record a decision it has made internally in a judicially reviewable action even while it seeks to impose liability on the industry for violating purported requirements the agency has never promulgated.

*Consequences of delay.*  The SEC's inaction also holds great "potential for harm."  *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987); *OCAWU*, 145 F.3d at 123.  The SEC's refusal to formalize its decision not to engage in rulemaking has created paralyzing uncertainty in the industry, while precluding direct judicial review.  That uncertainty has put companies like Coinbase in an impossible position.  They cannot adequately structure their businesses and plan for the future while the SEC refuses even to explain how inapt registration requirements apply to digital assets, or which assets are subject to which requirements.  Coinbase and other crypto firms need clear rules so they can confidently build and expand their businesses.

If the SEC continues to withhold that clarity, its inaction should be subject to judicial scrutiny, as the APA requires.  Judicial review of a formal SEC denial of Coinbase's rulemaking petition would enable a court to make clear that the agency's

abusive regulation-by-enforcement approach contravenes core tenets of administrative law and due process.  Upon reviewing the SEC's express refusal to engage in rulemaking, a court could (and properly would) conclude that the APA obligates the agency to proceed by rulemaking because it is the only realistic way in which the SEC can provide fair notice to affected stakeholders and coherently consider all important aspects of regulating the crypto industry.  *See NLRB v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 294 (1974) (explaining that there are "situations where [an agency's] reliance on adjudication would amount to an abuse of discretion"); *cf. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (action is arbitrary if agency ignores "an important aspect of the problem").  The practical effect of the SEC's refusal to act formally on Coinbase's petition is to enable the Commission to avoid—perhaps indefinitely—judicial scrutiny of its indefensible regulation-by-enforcement approach in this area.

*Agency impropriety.*  The SEC's attempted evasion of judicial review even while it pursues heavy-handed enforcement reflects a lack of good faith, which is yet another reason for holding its delay unreasonable.  "If the court determines that the agency delays in bad faith, it should conclude that the delay is unreasonable." *Cutler*, 818 F.2d at 898.  As discussed, the SEC's nine-month delay in memorializing a decision it has already made has no rational basis other than to insulate from judicial review the agency's failure to engage in rulemaking.  That points strongly to

agency "impropriety," particularly when considered in the broader context of the agency's conduct in this area. *TRAC*, 750 F.2d at 80. In demanding compliance with incompatible registration requirements, while refusing to undertake (and appearing to forswear) rulemaking or even to discuss alternative registration paths with the industry, the SEC's aim, it appears, is not to bring crypto firms into compliance, but to run the industry into the ground.[27] If that is in fact the SEC's objective, it should be prepared to explain and defend that position in federal court. Whatever the Commission's motivations, mandamus is needed to ensure that the agency can properly be held to account.

## CONCLUSION

For these reasons, this Court should issue a writ of mandamus instructing the SEC to respond to Coinbase's rulemaking petition within 7 days.

---

[27] In a maneuver that Coinbase considers to be similar in design and intent, federal banking agencies recently began a coordinated campaign to place crypto companies in another untenable bind—by making it difficult for crypto companies to obtain banking services. *See* Rachel Louise Ensign, *Banks Are Breaking Up With Crypto During Regulatory Crackdown*, Wall St. J. (Feb. 16, 2023), https://on.wsj.com/3G8hCEG; Katie Haun, *How U.S. Regulators Are Choking Crypto*, Wall St. J. (Mar. 27, 2023), https://on.wsj.com/40KMTp8.

Dated:  April 24, 2023

Reed Brodsky
Lefteri J. Christos
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
(212) 351-4000

Monica K. Loseman
Nicholas B. Venable
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Unit 4200
Denver, CO  80202
(303) 298-5700

Respectfully submitted,

/s/ Eugene Scalia
Eugene Scalia (D.C. Bar No. 447524)
    *Counsel of Record*
Jonathan C. Bond
Nick Harper
Robert A. Batista
M. Christian Talley
John N. Reed
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
EScalia@gibsondunn.com

*Counsel for Petitioner Coinbase, Inc.*

# CERTIFICATIONS

1.      This Petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because it contains 5,152 words, excluding the parts of the Petition exempted by Federal Rules of Appellate Procedure 21(d) and 32(f).

2.      This Petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

3.      Pursuant to this Court's Rule 31.1(c), the text of the electronic version of this document is identical to the text of the paper copies filed with the Court.

4.      Pursuant to this Court's Rule 31.1(c), the document has been scanned with version 14 of Symantec Endpoint Protection and is free of viruses.

5.      I hereby certify that at least one attorney whose name appears on this Petition is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

April 24, 2023                          /s/ Eugene Scalia
                                        Eugene Scalia

                                        *Counsel for Petitioner Coinbase, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2023, I caused the foregoing Petition for Writ of Mandamus to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the Court's CM/ECF system and to be filed in paper format pursuant to this Court's Rule 113.1(a).  I further certify that service was accomplished upon the following, in compliance with Rule 25(c) of the Federal Rules of Appellate Procedure, via first-class mail.

**United States Securities and Exchange Commission**
c/o Vanessa A. Countryman
Secretary
100 F Street, N.E.
Washington, D.C.  20549
(202) 551-5400
Secretarys-Office@sec.gov
apfilings@sec.gov

April 24, 2023                                  /s/ Eugene Scalia
                                                Eugene Scalia

                                                *Counsel for Petitioner Coinbase, Inc.*