No. 23-1779

# In the United States Court of Appeals for the Third Circuit

IN RE COINBASE, INC., *Petitioner.*

Petition for Writ of Mandamus to the
United States Securities and Exchange Commission

**BRIEF OF AMICUS CURIAE PARADIGM OPERATIONS LP
IN SUPPORT OF PETITIONER**

Kyle D. Hawkins
William T. Thompson
LEHOTSKY KELLER COHN LLP
919 Congress Ave., Suite 1100
Austin, TX 78701
(512) 693-8350
kyle@lkcfirm.com
will@lkcfirm.com

Gabriela Gonzalez-Araiza
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave., NW
Washington, DC 20001
(202) 365-2509
gabriela@lkcfirm.com

*Counsel for Amicus Curiae*

## Corporate Disclosure Statement

Paradigm Operations LP ("Paradigm") discloses the following information for the limited purpose of complying with Federal Rule of Appellate Procedure 26.1. Paradigm has no parent corporation. No publicly held corporation owns 10% or more of Paradigm's stock.

Paradigm reserves the right to supplement this disclosure statement if needed.

## TABLE OF CONTENTS

                                                                  Page

Corporate Disclosure Statement ....................................................................... i

Table of Authorities ......................................................................................... iii

Interest of Amicus Curiae ................................................................................. 1

Introduction and Summary of the Argument ................................................. 2

Argument ........................................................................................................... 4

    I.   The SEC Has a Duty to Explain How and Why Digital-Asset Trading Platforms Must "Come in and Register" Under Laws Passed a Century Ago......................................................... 5

        A.  Digital Assets Are Unlike Securities. ............................................. 5

        B.  Digital-Asset Trading Platforms Are Unlike Securities Exchanges. ...................................................................................... 6

    II.  The SEC's Inaction Amounts to a De Facto Ban. ............................... 8

Conclusion ....................................................................................................... 10

Certificate of Compliance ............................................................................... 11

# Table of Authorities

Page(s)

**Cases**

*In re Ctr. for Biological Diversity,*
   53 F.4th 665 (D.C. Cir. 2022) ................................................................................ 4

*Cutler v. Hayes,*
   818 F.2d 879 (D.C. Cir. 1987) ................................................................................ 4

*FCC v. Fox Television Stations, Inc.,*
   567 U.S. 239 (2012) ................................................................................................. 2

*MCI Telecomms. Corp. v. FCC,*
   627 F.2d 322 (D.C. Cir. 1980) ................................................................................ 2

*Prometheus Radio Project v. FCC,*
   824 F.3d 33 (3d Cir. 2016) ....................................................................................... 4

*TNA Merch. Projects, Inc. v. FERC,*
   857 F.3d 354 (D.C. Cir. 2017) ................................................................................ 2

**Statutes**

15 U.S.C. § 78 ..................................................................................................................... 6

**Other Authorities**

Coinbase, *Petition for Rulemaking - Digital Asset Securities*
   *Regulation,* https://bit.ly/3BdN01F (July 21, 2022) .................................. 6, 7

Coinbase, *What is a protocol?*, https://bit.ly/3posAjX (last visited
   May 10, 2023) ............................................................................................................. 6

Coinbase, *What is a token?*, https://bit.ly/3BhwduR (last visited
   May 10, 2023) ............................................................................................................. 5

CoinDesk, Michael Selig, *Opinion: What If Regulators Wrote Rules for Crypto?* (Jan. 24, 2023), https://bit.ly/3MeMdnH ...................................... 7

Cornerstone Research, *SEC Cryptocurrency Enforcement: 2022 Update*, https://bit.ly/3LWxHQd ............................................... 8, 9

Fed. R. App. P. 29 ................................................................................... 1

Gary Gensler, *Remarks Before the Aspen Security Forum* (Aug. 3, 2021), https://bit.ly/44Mk7aB ................................................................ 5

Paul Grewal, *We Asked the SEC for Reasonable Crypto Rules for Americans. We Got Legal Threats Instead.* (Mar. 22, 2023), https://bit.ly/3VTMJe7 ...................................................................... 7

Press Release, SEC, "SEC Charges Crypto Asset Trading Platform Bittrex and its Former CEO for Operating an Unregistered Exchange, Broker, and Clearing Agency, (Apr. 17, 2023)," https://bit.ly/42LdmUM ............................................... 2

Props Project, *A Letter from Our CEO* (Aug. 12, 2021), https://bit.ly/3Hwtzy8 ...................................................................... 9

Public Statement, Chair Gary Gensler, SEC, *2021 Aspen Security Forum: The View from the SEC: Cryptocurrencies and National Security* (Aug. 3, 2021), https://bit.ly/3VPLKeQ ............................................ 3

Rodrigo Seira, Justin Slaughter, Katie Biber, *Lessons from Crypto Projects' Failed Attempts to Register with the SEC - Part II*, Paradigm (Mar. 23, 2023), https://bit.ly/44PyWZN .................................. 9

Rodrigo Seira, Justin Slaughter, Katie Biber, *SEC's Path to Registration - Part III*, Paradigm (Apr. 20, 2023), https://bit.ly/42nHt4R ....................................................................... 6

Sander Lutz, *SEC Chair Gensler Threatens Action Against Unregistered Crypto Exchanges* (May 18, 2022), https://bit.ly/3I0g40J ....................................................................................... 3

## INTEREST OF AMICUS CURIAE

Paradigm Operations LP ("Paradigm") is an investment firm that backs entrepreneurs building innovative crypto and web3 companies and protocols.[1] Paradigm takes a hands-on approach to helping these projects achieve their full potential and provides a variety of services that range from technical (mechanism design, smart contract security, and engineering) to operational (recruiting and regulatory strategy).

Coinbase's petition for writ of mandamus addresses a fundamental obstacle to participants in the crypto market: The SEC's persistent refusal to issue clear rules and guidance governing digital assets[2] and digital-asset trading platforms. That refusal impacts the entrepreneurs that Paradigm backs, leaving them both uncertain of the law's requirements and unable to seek judicial review. Accordingly, Paradigm has a strong interest in ensuring the SEC follows the law and operates consistent with both the letter and

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E). Counsel for Petitioner and Respondent do not oppose the filing of this amicus brief. *See* Fed. R. App. P. 29(a)(2).

[2] We use the term "digital asset" to refer to an asset that is uniquely identifiable through the use of cryptography and blockchain technology. In various places, the term "token" is also used to refer to a digital asset that conforms to a certain industry standard, such as ERC-20.

spirit of the Administrative Procedures Act and the Securities Exchange Act of 1934.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Among an administrative agency's most solemn obligations is to provide "fair warning" to the entities it regulates. *TNA Merch. Projects, Inc. v. FERC*, 857 F.3d 354, 360 (D.C. Cir. 2017); *see also FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). And it must provide that warning expeditiously, since "delay in the resolution of administrative proceedings can . . . deprive regulated entities, their competitors or the public of rights and economic opportunities without the due process the Constitution requires." *MCI Telecomms. Corp. v. FCC*, 627 F.2d 322, 341 (D.C. Cir. 1980).

For over a decade, the SEC has flouted those bedrock principles by refusing to formally tell both the digital-assets industry and the federal judiciary what it thinks the law requires of digital-asset trading platforms. Instead, the SEC has chosen to regulate through press releases, "office hour" videos posted on Twitter, enforcement actions, and thinly veiled threats. *See* Pet. 2-3.[3] For example, SEC Chair Gary Gensler has testified to Congress that "[t]he crypto exchanges should come in and register" and "work with the SEC"—

---

[3] *See also, e.g.*, Press Release, SEC, "SEC Charges Crypto Asset Trading Platform Bittrex and its Former CEO for Operating an Unregistered Exchange, Broker, and Clearing Agency, (Apr. 17, 2023)," https://bit.ly/42LdmUM.

without explaining how or why.[4] But until the SEC engages in the rulemaking Coinbase has requested, the digital-assets industry is stuck in limbo, simultaneously told to "come in and register" yet having no effective means of doing so. It is no surprise that the SEC's actions have crippled a nascent industry and sown confusion among countless firms unable to conform to the SEC's view of the law or challenge that view in court. This stands in stark contrast to other jurisdictions, like the European Union, that have taken a proactive approach to providing a workable regulatory framework for crypto.

That is not how administrative law is supposed to work. As Coinbase's petition demonstrates, century-old securities laws do not fit digital assets and their exchanges. If the SEC wants companies to "come in and register," then it must explain, subject to judicial review, how it thinks laws passed in the 1930s apply to digital assets today. The SEC has an obligation to put the industry on notice, allow individuals to conform their conduct to the law, and subject its views to the crucible of judicial review. By refusing to do so, the agency effectively paralyzes a major and growing industry.

---

[4] Sander Lutz, *SEC Chair Gensler Threatens Action Against Unregistered Crypto Exchanges* (May 18, 2022), https://bit.ly/3I0g40J (stating to the House Financial Services and General Government Subcommittee that "[t]he crypto exchanges should come in and register . . ."); Public Statement, Chair Gary Gensler, SEC, *2021 Aspen Security Forum: The View from the SEC: Cryptocurrencies and National Security* (Aug. 3, 2021), https://bit.ly/3VPLKeQ (inviting digital-asset trading platforms to "come in, register, work with the SEC").

3

That inaction strongly supports Coinbase's request for a writ of mandamus. This Court has long recognized that the serious practical consequences of an agency's refusal to act may merit mandamus relief. *See, e.g.*, *Prometheus Radio Project v. FCC*, 824 F.3d 33, 40 (3d Cir. 2016). Here, the "potential for harm" caused by the SEC's delay is significant. Pet. 20-21; *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987); *see also In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) ("The court should also take into account the nature and extent of the interests prejudiced by delay[.]" (citation omitted)). The Court should grant mandamus relief and direct the SEC to respond to the petition for rulemaking that Coinbase filed nearly a year ago.

## ARGUMENT

As the mandamus petition demonstrates, the SEC's refusal to respond to Coinbase's rulemaking petition "has created paralyzing uncertainty in the industry" and put companies "in an impossible position." Pet. 20; *see also Cutler*, 818 F.2d at 898. Indeed, experience shows that digital-asset trading platforms are unable to "come in and register" under laws passed in the 1930s—and it is far from clear why they should have to do so in the first place. By design, digital assets differ fundamentally from securities, and digital-asset trading platforms differ fundamentally from securities exchanges. Registration rules for one cannot simply be forced onto the other, and absent a clear requirement and mechanism for registration, the digital-assets industry is all but paralyzed. Rather than clear up this confusion, the SEC lets it

linger in the hope of evading judicial review. The Court should not tolerate this affront to basic principles of not only administrative law, but also good governance.

## I. The SEC Has a Duty to Explain How and Why Digital-Asset Trading Platforms Must "Come in and Register" Under Laws Passed a Century Ago.

As Coinbase's rulemaking petition demonstrates, the SEC has put the digital-assets industry in a Catch-22. According to the SEC's public statements, digital-asset trading platforms have a duty to register under the Securities Exchange Act of 1934. *See* Gary Gensler, *Remarks Before the Aspen Security Forum* (Aug. 3, 2021), https://bit.ly/44Mk7aB. How and why are they supposed to do so? The SEC refuses to say. But digital assets and their exchanges are fundamentally different from securities and their exchanges. Absent rulemaking, there is simply no way to "come in and register."

### A. Digital Assets Are Unlike Securities.

Part of the attraction and value of digital assets is the ways in which they differ fundamentally from securities. It does not follow that regulation of securities can or should neatly translate to the digital-asset market.

As compared to securities like stocks or bonds, digital assets do not make holders part owners of a company, nor do they provide any legal rights to dividends generated by that company, nor do they confer any governance rights applicable to a company. *See, e.g.*, Coinbase, *What is a token?*, https://bit.ly/3BhwduR (last visited May 10, 2023). While securities embody

5

legal rights that are enforceable against a company, digital assets provide holders with technological abilities that are enabled by "protocols"—in essence, the computer program that governs the digital asset. *See e.g.*, Coinbase, *What is a protocol?*, https://bit.ly/3posAjX (last visited May 10, 2023). This fundamental difference means that digital assets can exist independent of the entity that originally developed and deployed the code that created the digital assets. Rodrigo Seira, Justin Slaughter, Katie Biber, *SEC's Path to Registration – Part III*, Paradigm (Apr. 20, 2023), https://bit.ly/42nHt4R. Therefore, a digital asset's value is not tied to the value or performance of an "issuer," but instead, "determined by adoption and use." Coinbase, *Petition for Rulemaking – Digital Asset Securities Regulation,* https://bit.ly/3BdN01F (July 21, 2022), at 5. The securities laws' myopic focus on providing the market with disclosures about an "issuer" has little if any relevance to digital assets, which can operate and accrue value completely independent of any such "issuer." *Id.*; *see also id*. n.8.

### B. Digital-Asset Trading Platforms Are Unlike Securities Exchanges.

Digital assets also differ from securities because they trade using fundamentally different technology. It is therefore no surprise that digital-asset trading platforms share little in common with the securities exchanges Congress set out to regulate in 1934. *See* 15 U.S.C. § 78c(a)(1). Accordingly, the registration rules governing exchanges do not fit digital-asset trading platforms.

Perhaps that is why digital-asset trading platforms have not managed to register as exchanges. Consider Coinbase as an example. At the SEC's request, it "developed and proposed two different registration models" that would allow it to "register[] some portion of [its] business with the SEC." Paul Grewal, *We Asked the SEC for Reasonable Crypto Rules for Americans. We Got Legal Threats Instead.* (Mar. 22, 2023), https://bit.ly/3VTMJe7. Although Coinbase had "spent millions of dollars on legal support to build these proposals" and "met with the SEC more than 30 times over nine months," Coinbase has stated the SEC provided no feedback, cancelled a scheduled meeting, and "shift[ed] back to an enforcement investigation." *Id.*

So if the SEC believes that digital-asset trading platforms should "come in and register" under laws governing securities exchanges, it should first answer two distinct but related questions. First, before the SEC can demand that Coinbase and other trading platforms register as securities exchanges, it must explain which digital assets it believes are securities, what type of securities the SEC believes they are, and why. *Cf.* Coinbase, *Petition for Rulemaking – Digital Asset Securities Regulation* (July 21, 2022), at 18.

Second, a hallmark of the digital-asset market is the ability for customers to have direct access to platforms that execute transactions in real time and without the need for intermediaries. *Id.* at 17. But traders on a national securities exchange must be members of the exchange, and members of the exchange must be registered broker-dealers. And these broker-dealers are limited to trading crypto-assets securities. *Id.*; *see also* CoinDesk, Michael Selig,

7

*Opinion: What If Regulators Wrote Rules for Crypto?* (Jan. 24, 2023), https://bit.ly/3MeMdnH. How is a digital-asset trading platform that *by design* is built differently from securities exchanges supposed to satisfy the requirements governing securities exchanges?

In short, the digital-asset market and its trading platforms differ fundamentally—and by design—from the hallmarks of securities and their exchanges. To tell digital-asset trading platforms to "come in and register" under laws written to govern an entirely different technology is incompatible with the nature of digital assets. If the SEC believes companies must jam the square peg of digital assets into the round hole of securities regulations, it should promulgate a formal rule and defend that rule in court.

## II.  The SEC's Inaction Amounts to a De Facto Ban.

Under the current landscape, the SEC (1) demands digital-asset trading platforms register, (2) refuses to provide a path for doing so, and (3) brings a litany of enforcement actions against companies that have not registered. It is no surprise that the end result of this untenable situation is a de facto ban on digital-asset trading platforms and a grave threat to a fledgling industry.

The SEC brought 30 crypto-related enforcement actions against crypto market participants in 2022 alone. Cornerstone Research, *SEC Cryptocurrency Enforcement: 2022 Update*, https://bit.ly/3LWxHQd, at 1. This is a 50% increase in crypto-related enforcement actions since 2021 and represents a quarter of

the total crypto-related enforcement actions brought in the last 10 years (since the SEC's first crypto enforcement action). *Id*. These enforcement actions resulted in $2.61 billion in monetary penalties against digital-asset market participants. *Id*. No wonder that the few digital assets that have attempted to register as securities are now mostly defunct. *See* Rodrigo Seira, Justin Slaughter, Katie Biber, *Lessons from Crypto Projects' Failed Attempts to Register with the SEC – Part II*, Paradigm (Mar. 23, 2023), https://bit.ly/44PyWZN. And without licensed broker-dealers and exchanges, the secondary market for digital assets that are able to register as securities is nonexistent. *See, e.g.*, Props Project, *A Letter from Our CEO* (Aug. 12, 2021), https://bit.ly/3Hwtzy8 (noting that although the company had registered its token as a security, "no U.S. exchange has been able to list crypto assets such as the Props Token, which has hindered holders wishing to trade them").

This is not the rule of law; it is rule by bureaucratic whim. Coinbase, on behalf of the digital-assets industry, simply asks the SEC to say what the rules are and submit those rules to judicial (and congressional) review. It is simply not permissible to subject this fast-growing industry to a shadow ban.

## Conclusion

The Court should grant Coinbase's petition and issue a writ of mandamus instructing the SEC to respond to Coinbase's rulemaking petition.

Dated: May 10, 2023                     Respectfully submitted.

/s/ *Kyle D. Hawkins*
Kyle D. Hawkins
William T. Thompson
LEHOTSKY KELLER COHN LLP
919 Congress Ave., Suite 1100
Austin, TX 78701
(512) 693-8350
kyle@lkcfirm.com
will@lkcfirm.com

Gabriela Gonzalez-Araiza
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave., NW
Washington, DC 20001
(202) 365-2509
gabriela@lkcfirm.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1. I hereby certify that at least one attorney whose name appears on this brief is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because it contains 2,180 words, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 21(d) and 32(f).

3. This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word.

4. Pursuant to this Court's Rule 31.1(c), the text of the electronic version of this document is identical to the text of the paper copies filed with the Court.

5. Pursuant to this Court's Rule 31.1(c), the document has been scanned with McAfee anti-virus software and is free of viruses.

6. I hereby certify that on May 10, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

/s/ *Kyle D. Hawkins*
Kyle D. Hawkins