**No. 23-1779**

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE THIRD CIRCUIT

---

IN RE COINBASE, INC.

*Petitioner*

---

*On Petition for a Writ of Mandamus to the United States*
*Securities and Exchange Commission.*

---

### UNOPPOSED MOTION OF INVESTOR CHOICE ADVOCATES NETWORK FOR LEAVE TO FILE AN *AMICUS CURIAE* BRIEF IN SUPPORT OF PETITIONER

---

Investor Choice Advocates Network ("ICAN"), respectfully seeks leave to file an *amicus curiae* brief in support of Petitioner Coinbase, Inc.'s petition for a writ of mandamus.  Petitioner Coinbase and Respondent U.S. Securities and Exchange Commission ("SEC" or "Commission") have both consented to ICAN's participation as an *amicus curiae*. Because the Federal Rules of Appellate Procedure do not explicitly address the filing of an *amicus curiae* brief in support of a petition for writ of mandamus, however, ICAN submits this unopposed motion out of an abundance of caution.

ICAN is a nonprofit organization that advocates for expanding access to markets—including markets for digital assets—for underrepresented investors and

entrepreneurs who do not share the same access and market power as those with more assets and resources. ICAN has a significant interest in ensuring clarity with regard to the application of the federal securities laws to all types of assets, including digital assets. Respondent SEC's practice of regulatory ambiguity toward digital assets harms investors by chilling legitimate investment activity and thereby improperly reducing opportunities available to investors. ICAN has a further interest in these proceedings because, like Coinbase, it submitted a rule petition to the SEC. On November 9, 2022, ICAN submitted a petition requesting that the SEC initiate rulemaking to replace the net worth and income requirements of Rule 501(a) under the Securities Act of 1933 with non-financial metrics. To-date, ICAN has received no indication that Respondent has considered or will ever consider or respond to its petition. Like Coinbase, ICAN has an interest in ensuring that the SEC does not utilize the failure to respond to requests for rulemaking to insulate its regulatory actions from judicial review. Finally, ICAN represents interests and presents a perspective different than the perspectives of Coinbase, a crypto-currency trading platform, and SEC, a federal government regulatory agency. Conversely, ICAN presents the perspective of investors in seeking to maximize the choices available to all investors. This perspective would be helpful to the Court as it considers the important issues raised by Coinbase's petition.

While the Federal Rules of Appellate Procedure do not explicitly address the filing of an *amicus curiae* brief in support of a mandamus petition, the rules do permit the filing of an *amicus* brief "during a court's initial consideration of a case on the merits." Fed. R. App. P. 29(a)(1). In a case initiated by a petition for a writ of mandamus, the logical time for the filing of an *amicus* brief is while the court of appeals is considering the petition.

Under the rules, an *amicus* brief is appropriate when an *amicus* "ha[s] a sufficient 'interest' in the case" and its brief "is 'relevant' and 'desirable.'" *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 129, 133 (3d Cir. 2002) (Alito, J.) (quoting current Fed. R. App. P. 29(a)(3)). For reasons stated above, ICAN has a strong interest in this case, and its perspective as an organization that advocates for expanding access to markets—including markets for digital assets— for underrepresented investors and entrepreneurs would aid the Court's deliberation of the issues presented in Coinbase's petition.

While the appellate rules provide that an *amicus* brief must be filed within seven days of "the principal brief of the party being supported," Fed. R. App. P. 29(a)(6), that timing requirement is tailored to a situation where an *amicus* brief is filed in the course of normal appellate briefing, when the briefing schedule is known in advance and the briefing intervals are reasonably extensive. *See* Fed. R. App. P. 31(a)(1). This timing requirement does not apply automatically to the

circumstances where an *amicus* seeks to support a mandamus petition.  And this Court has discretion to permit a later filing.  *See* Fed. R. App. P. 29(a)(6).  Here, ICAN has prepared its *amicus* brief with dispatch, and is filing it within seven days of the Court's order directing the SEC to file a response to Coinbase's petition. *See* Docket No. 9 (3d Cir. May 3, 2023).  Accepting ICAN's brief would also not prejudice the SEC, who consented to the filing.  ICAN is filing its brief in advance of when the SEC's response is due, which should provide the SEC with sufficient time to respond to ICAN's arguments.

For the reasons stated above, Investor Choice Advocates Network, respectfully requests that this Court grants leave to file its proposed *amicus curiae* brief.

Respectfully,

DATED:  May 10, 2023

By: */s/ Kurt Hansson*
Kurt W. Hansson, N.Y Bar No. 4472825
kurthansson@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
Telephone: 1(212) 318-6000
Facsimile:  1(212) 319-4090

Igor V. Timofeyev*, D.C. Bar No. 998291
igortimofeyev@paulhastings.com
Nicolas Morgan*, CA Bar No. 166441
nicolasmorgan@paulhastings.com
2050 M Street NW
Washington, DC   20036
Telephone: 1(202) 551-1700
Facsimile:  1(202) 551-1705
*Application for admission pending

Attorneys for Amicus Curiae

INVESTOR CHOICE ADVOCATES
NETWORK

# EXHIBIT A

No. 23-1779

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE THIRD CIRCUIT

IN RE COINBASE, INC.

*Petitioner.*

*On Petition for a Writ of Mandamus to the United States*
*Securities and Exchange Commission.*

## BRIEF OF *AMICUS CURIAE* INVESTOR CHOICE ADVOCATES NETWORK IN SUPPORT OF PETITIONER

Kurt W. Hansson, N.Y Bar No. 4472825
kurthansson@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
Telephone: 1(212) 318-6000
Facsimile:  1(212) 319-4090

Igor V. Timofeyev*, D.C. Bar No. 998291
igortimofeyev@paulhastings.com
Nicolas Morgan*, CA Bar No. 166441
nicolasmorgan@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC   20036
Telephone: 1(202) 551-1700
Facsimile:  1(202) 551-1705
*Application for admission pending

*Attorneys for Amicus Curiae*

INVESTOR CHOICE ADVOCATES NETWORK

## CORPORATE DISCLOSURE STATEMENT

*Amicus Curiae* submits the following corporate disclosure statement: Investor Choice Advocates Network ("ICAN") is a nonprofit, public interest organization working to expand access to markets by underrepresented investors and entrepreneurs.  ICAN has no parent corporation, and no publicly held company has a 10% or greater ownership in ICAN.

# <u>TABLE OF CONTENTS</u>

**Page**

CORPORATE DISCLOSURE STATEMENT ......................................................III

STATEMENT OF INTEREST ..............................................................................1

SUMMARY OF ARGUMENT ..............................................................................3

ARGUMENT ........................................................................................................3

A.    By Failing to Acknowledge Limits to Its Jurisdiction, the SEC Chills
      Legitimate Investment Opportunities, Harms Investors................................4

B.    By Failing to Act on Rulemaking Petitions, the SEC Discourages the
      Investing Public From Petitioning for Reforms ............................................7

CONCLUSION ....................................................................................................12

CERTIFICATE OF SERVICE ............................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chamber of Commerce of the
    United States of America v. SEC*,
    412 F.3d 133 (D.C. Cir. 2005).................................................................4

**Statutes**

Securities Act of 1933............................................................................1, 2, 11

    Rule 501(a)..........................................................................................2, 11

**Other Authorities**

Gary Gensler, Chair, U.S. SEC, *Testimony Before the United States
    Senate Committee on Banking, Housing, and Urban Affairs*,
    https://www.sec.gov/news/testimony/gensler-testimony-housing-
    urban-affairs-091522 (Sept. 15, 2022)...................................................5

Hester M. Peirce, Commissioner, SEC, *Remarks before the Investment
    Advisory Committee*, (December 2, 2021)..............................................4

Hester M. Peirce and Elad L. Roisman, Commissioners, SEC,
    *Statement in the matter of Coinschedule*,
    https://www.sec.gov/news/public-statement/peirce-roisman-
    coinschedule (July 14, 2021) ................................................................8

Nikhilesh De, *SEC Chair Gensler Declines to Say if Ether Is a
    Security in Contentious Congressional Hearing*, Coindesk,
    https://www.coindesk.com/policy/2023/04/19/sec-chair-gensler-
    declines-to-say-if-ether-is-a-security-in-contentious-congressional-
    hearing/ (April 19, 2023) .....................................................................7

Ronald J. Colombo, *Merit Regulation via the Suitability Rules*,
    Journal of International Business and Law: Vol. 12: Iss. 1,
    Article 2 (2013)....................................................................................5

William Hinman, Dir., Div. of Corp. Fin., SEC, *Digital Asset*
*Transactions: When Howey Met Gary* (Plastic),
https://www.sec.gov/news/speech/speech-hinman-061418
(June 14, 2018)..................................................................................................6

## INTERESTS OF *AMICUS CURIAE*[1]

Investor Choice Advocates Network ("ICAN") is a nonprofit organization that advocates for expanding access to markets—including markets for digital assets— for underrepresented investors and entrepreneurs who do not share the same access and market power as those with more assets and resources.

*Amicus* ICAN has a significant interest in ensuring clarity in the SEC's application of the federal securities laws to assets, including digital assets. As an organization speaking on behalf of underrepresented market participants, *Amicus* also has a significant interest in ensuring the SEC's power to regulate securities does not improperly hamper the ability of individuals and organizations seeking to engage in the sort of digital asset transactions that Coinbase and similar entities facilitate. The SEC's ambiguous and expansive interpretation and application of the Securities Act of 1933 ("Securities Act"), Securities Exchange Act of 1934 ("Exchange Act"), and other federal securities laws to digital assets will have far-reaching negative consequences on the opportunities available to investors across the country.

Finally, *Amicus* ICAN has an interest in urging the SEC to respond in a timely manner to rulemaking petitions such as those submitted by Coinbase. In November,

---

[1] Petitioner Coinbase, Inc. and Respondent U.S. Securities and Exchange Commission have consented to the filing of this brief. No party or party's counsel, and no person other than *Amicus* ICAN and its counsel, authored this brief in whole or in part or contributed money intended to fund preparing or submitting the brief.

2022, *Amicus* ICAN petitioned the SEC for rulemaking with respect to certain requirements of Rule 501(a) under the Securities Act of 1933, yet has received no response or decision from the Commission.  The investing public's ability to petition the federal government agency responsible for regulating the securities markets, and the federal courts' ability to ensure that the agency adheres to the administrative law requirements in its rulemaking, carries little worth if the SEC may simply ignore such petitions indefinitely.

The interests of *Amicus* ICAN differ from those of the parties.  As stated above, ICAN is a nonprofit organization advocating for the protection and maximization of investor choice--a perspective that may not be adequately represented by the positions of either Coinbase (a for-profit crypto-currency exchange) or the SEC (a federal government regulatory agency).

## SUMMARY OF ARGUMENT

The SEC's failure to act on Coinbase's rulemaking petition not only contravenes the requirements of the Administrative Procedure Act, but is also against public policy in at least two important ways.

*First*, the SEC has failed to acknowledge any meaningful limits to its jurisdiction in the digital assets area, meaning that those who sell digital assets have had the threat of enforcement without the benefit of any rules. When the SEC fails to act in response to a rulemaking petition, it signals a desire for weaponized ambiguity to the detriment of digital asset issuers and the investors or consumers who buy those assets.

*Second*, through its inaction the SEC disenfranchises all rulemaking petitioners, including those seeking rulemaking that would increase choices available to investors and consumers.

## ARGUMENT

The Court should grant Coinbase's petition for a writ of mandamus and require the Commission to take action – one way or the other – on Coinbase's rulemaking petition. To deny Coinbase's writ would not only license the SEC's abdication of its responsibility as an administrative agency, but also chill the development of digital assets and instruments that the consuming public is interested in buying.

A. By Failing to Acknowledge Limits to Its Jurisdiction, the SEC Chills
Legitimate Investment Opportunities and Harms Investors

The SEC's failure to engage in rulemaking delineating the permissible

boundaries of trading in digital assets subjects the cryptocurrency industry, its

trading platforms, and investors to unnecessary uncertainty as to what constitutes

permissible legal conduct.  Chilling legal conduct contravenes public policy.  If the

SEC were successful in chilling legal investing activities in the digital assets area,

investors may be deprived of the opportunity to purchase the investments of their

choice.  Depriving investors of the opportunity to participate in legal investing

activity (even if disfavored by the SEC) would cause them harm thereby harming

the public interest as well.  *See Chamber of Commerce of the United States of Am.*

*v. SEC*, 412 F.3d 133, 144 (D.C. Cir. 2005) (loss of opportunity to purchase mutual

fund shares constituted a legally cognizable injury).

As SEC Commissioner Hester M. Peirce has observed, maintaining

"regulatory ambiguity" around digital assets "is costly and treacherous for well-

intentioned developers and their lawyers."[2]  The ability to increase costs and

regulatory risks associated with a particular asset class enables the SEC to

---

[2] Commissioner Hester M. Peirce, Remarks before the Investment Advisory
Committee, December 2, 2021 ("The SEC has not provided clarity in response to
repeated questions on crypto from reputable players, but has instead embraced an
approach that has been described aptly to me as "strategic ambiguity." Such an
approach facilitates enforcement actions, but it is costly and treacherous for well-
intentioned developers and their lawyers.").

discourage investments in that asset class without explicitly prohibiting such investments.

As the SEC Chairman acknowledged recently in congressional testimony, the SEC is a disclosure-based regulator, and does not have the authority to engage in merit-based regulation.

> For the last 90 years, our capital markets have relied on a basic bargain. Investors get to decide which risks to take, as long as companies provide full, fair, and truthful disclosures. Congress tasked the SEC with overseeing this bargain. We do so through a disclosure-based regime, not a merit-based one. [3]

Explicitly prohibiting investments in an asset class, however, would transform the SEC into a "merits based" regulator—something Congress specifically sought to avoid when it created the SEC. A merits-based regulator has the ability to prohibit investors from exercising their own decisions and runs the risk that the regulator's requirements are applied inappropriately.[4] Congress explicitly precluded a merits-based approach when establishing the SEC because it "wanted to 'avoid the implicit approval by the federal government of the merits of any securities offered for sale to the public.'"[5]

---

[3] Gensler, Gary, Chair, U.S. Securities and Exchange Commission, *Testimony Before the United States Senate Committee on Banking, Housing, and Urban Affairs* (Sept. 15, 2022), available at: https://www.sec.gov/news/testimony/gensler-testimony-housing-urban-affairs-091522.

[4] Colombo, Ronald J., *Merit Regulation via the Suitability Rules*, 12(1) J. of Int'l Bus. & L. (2013).

[5] *Id.* at 4.

Maintaining regulatory ambiguity toward digital assets improperly enables the SEC to do implicitly what it may not do explicitly: disapprove of the merits of investments offered for sale to the public. Examples of the SEC's "regulatory ambiguity" abound, but of particular note here is that the SEC has been ambivalent when it comes to acknowledging the limits of its jurisdiction over digital assets that are *not* securities. In other words, with no meaningful exceptions, the SEC has refused to identify digital assets that are not securities and are therefore outside the SEC's jurisdiction to regulate. Sometimes the SEC or its staff have come close to acknowledging the limits of its jurisdiction in this space, only to revert to the equivalent of "no comment."

Two recent examples make the point. In 2018, the then-Director of the SEC's Division of Corporation Finance said the following in a speech regarding one digital asset, Ether: "putting aside the fundraising that accompanied the creation of Ether, based on my understanding of the present state of Ether, the Ethereum network and its decentralized structure, current offers and sales of Ether are not securities transactions."[6] Seems unambiguous. But when subsequently the SEC's Chairman was directly asked at a hearing before the House Financial

---

[6] See William Hinman, Dir., Div. of Corp. Fin., SEC, *Digital Asset Transactions: When Howey Met Gary* (Plastic) (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418.

Services Committee whether Ether is a security, he refused to provide an answer.[7]
"Strategic ambiguity."

Similarly, in a 2022 proposed rule regarding hedge fund disclosures, the
SEC included a definition of "digital assets" that, while not a model of clarity,
provided some guidance.[8]  When the SEC issued the final rule a year later,
however, the previously included definition of "digital assets" was absent.  In its
place was a footnote reading: "The commission and staff are continuing to
consider this term and are not adopting 'digital assets' as part of this rule at this
time."[9]  More "strategic ambiguity."

By requesting that the SEC engage in rulemaking with respect to digital
assets, Coinbase has sought to remove some of the uncertainty created by the
SEC's "strategic ambiguity."  Unfortunately, the SEC's failure to act on
Coinbase's rulemaking petition—even by indicating whether or not it would
engage in rulemaking--compounds the "strategic ambiguity" to the detriment of the
investing public.

B. By Failing to Act on Rulemaking Petitions, the SEC Discourages the
   Investing Public From Petitioning for Reforms

---

[7] Nikhilesh De, *SEC Chair Gensler Declines to Say if Ether Is a Security in
Contentious Congressional Hearing*, Coindesk (Apr. 19, 2023), available
https://www.coindesk.com/policy/2023/04/19/sec-chair-gensler-declines-to-say-if-
ether-is-a-security-in-contentious-congressional-hearing/
[8] https://www.sec.gov/rules/proposed/2022/ia-6083.pdf
[9] https://www.sec.gov/rules/final/2023/ia-6297.pdf

The SEC's pattern of routinely ignoring rulemaking petitions seeking clarity around digital asset regulation has the effect of discouraging not only such petitions, but also innovation in the digital asset space.  Irrespective of the SEC's reasons for not engaging in the requested  rulemaking, the agency's failure to respond to such petitions contravenes not only the fundamental precepts of administrative law, but also public policy.  In fact, the SEC's abdication of its duty to respond to these requests signals that petitioning the government has no impact—a suggestion detrimental to the legitimacy of administrative agencies.

Coinbase's rulemaking petition was by no means the first public request to the SEC for greater clarity around digital assets, including requests for "no action" letters from the SEC staff.[10]  Indeed, Coinbase's petition was not even the first rulemaking petition on the subject.[11]  Other, prior requests include at least the following:

- March 15, 2017--Rulemaking petition by Ouisa Capital regarding the regulation of digital assets and blockchain technology .  The petition

---

[10] *See*, Commissioners Hester M. Peirce and Elad L. Roisman, Statement in the matter of Coinschedule (July 14, 2021) available at https://www.sec.gov/news/public-statement/peirce-roisman-coinschedule ("There is a decided lack of clarity for market participants around the application of the securities laws to digital assets and their trading, as is evidenced by the requests each of us receives for clarity and the consistent outreach to the Commission staff for no-action and other relief.").

[11] SEC rulemaking petitions can be found here: https://www.sec.gov/rules/petitions.htm

stated "Ouisa encourages the SEC to engage in a meaningful discussion of how to regulate FinTech companies that are issuing digital assets that may be deemed securities and the platforms and broker-dealers that facilitate the issuance and trading of those digital assets. We believe digital assets in several contexts are securities and that existing laws provide a mechanism for regulation of the issuance and trading of digital assets.  However, we encourage the SEC to publish a concept release on the regulation of the issuance and trade of digital assets to provide suitable guidance to the industry followed by the adoption of a new regulation on the same." (https://www.sec.gov/rules/petitions/2017/petn4-710.pdf)  The SEC did not respond.

- January 26, 2018--Rulemaking petition by Liquid M Capital, LLC related to issuance of initial coin offerings that took place prior to the promulgation of related guidance by the Commission.  The petition stated: "Liquid M encourages the SEC to provide an opportunity for issuers of tokens through initial coin offerings ('ICOs') that took place prior to the promulgation of related guidance by the SEC the opportunity to remediate their illegal offerings."

(https://www.sec.gov/rules/petitions/2018/petn4-719.pdf)  The SEC did not respond.

- December 12, 2018--Request for rulemaking by Templum, Inc. to address how digital assets are regulated once a trade occurs   The petition stated: "We encourage the SEC to provide needed guidance related to post-trade activities in the digital asset space." (https://www.sec.gov/rules/petitions/2018/petn4-736.pdf)  The SEC did not respond.

- April 12, 2021—Request by Sustainable Holdings, PBC to provide regulatory clarity with respect to the regulation of a new form of digital assets – non-fungible tokens.  The request stated: "Arkonis encourages the SEC to engage in a meaningful discussion of how to regulate FinTech companies and individuals that are creating NFTs that may be deemed digital asset securities and the platforms that facilitate the issuance and trading of NFTs."  (https://www.sec.gov/rules/petitions/2021/petn4-771.pdf)  The SEC did not respond.

- January 22, 2022--Petition for Rulemaking by J.W. Verret, Associate Professor, George Mason University Antonin Scalia School of Law requesting the Commission to issue an open call for comment from the public regarding the need for flexibility in the application of the federal

securities laws to digital assets in order to initiate an open-sourced

redesign of regulations enforced under the federal securities laws.  The

petition noted that "[t]his call for comment might function as a 'genesis

block' for the SEC to initiate an open-sourced redesign of regulations

enforced pursuant to the laws enforced by the SEC."

(https://www.sec.gov/rules/petitions/2022/petn4-782.pdf)  The SEC did

not respond.

On November 9, 2022, *Amicus* ICAN itself petitioned the SEC to engage in

rulemaking to reduce the diversity, equity, and inclusion ("DEI") barriers for

"accredited investors" by replacing the net worth and income requirements of Rule

501(a) under the Securities Act of 1933 with non-financial metrics—an issue

broadly applicable to both digital securities and traditional securities.[12]  ICAN

received no response or comment.

Coinbase's petition amply sets forth why the SEC's refusal to respond to its

rulemaking petition contravenes settled requirements of administrative law and this

Court's precedents.  *Amicus* ICAN respectfully submits that the SEC's

demonstrated, years-long practice of routinely ignoring petitions for rulemaking

regarding digital assets and other subjects is also against public policy and

---

[12] Available at https://www.sec.gov/rules/petitions/2022/petn4-796.pdf

discourages investors, citizens, and others from petitioning the SEC in the first place.

## CONCLUSION

For these reasons, *Amicus* ICAN supports the petition for a writ of mandamus instructing the SEC to respond to Coinbase's rulemaking petition.

Respectfully,

DATED:    May 10, 2023    PAUL HASTINGS LLP


By: */s/ Kurt Hansson*
        Kurt Hansson, N.Y Bar No. 4472825
        kurthansson@paulhastings.com

        200 Park Avenue
        New York, NY  10166
        Telephone: 1(212) 318-6000
        Facsimile:  1(212) 319-4090

        Igor V. Timofeyev*, D.C. Bar No. 998291
        igortimofeyev@paulhastings.com
        Nicolas Morgan*, CA Bar No. 166441
        nicolasmorgan@paulhastings.com
        2050 M Street NW
        Washington, DC   20036
        Telephone: 1(202) 551-1700
        Facsimile:  1(202) 551-1705
        *Not admitted to practice in the Third Circuit*

        *Attorneys for Amicus Curiae*
        INVESTOR CHOICE ADVOCATES
        NETWORK

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Proposed Order,

Motion, and Brief was electronically filed with the Clerk of Court on May 10,

2023 using CM/ECF, which will send notification of such filing to counsel of

record.


*/s/ Kurt Hansson*
Kurt Hansson
kurthansson@paulhastings.com
200 Park Avenue
New York, NY  10166
Telephone: 1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Amicus Curiae*
INVESTOR CHOICE ADVOCATES
NETWORK