No. 23-1779

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

In re Coinbase, Inc., Petitioner

On Petition for a Writ of Mandamus to the
Securities and Exchange Commission

## BRIEF FOR RESPONDENT SECURITIES AND EXCHANGE COMMISSION

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
Assistant General Counsel

DAVID D. LISITZA
Senior Appellate Counsel

DANIEL T. YOUNG
Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202-551-5015 (Lisitza)
lisitzad@SEC.gov

*Counsel for Respondent Securities and Exchange Commission*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ..................................................................................1

JURISDICTIONAL STATEMENT .........................................................2

BACKGROUND ...................................................................................3

REASONS FOR DENYING THE PETITION .........................................6

I.   Coinbase is not entitled to the extraordinary relief it seeks.............................8

II.  Coinbase's contention that the Commission is unreasonably
     withholding a decision already made is meritless. ........................................18

CONCLUSION...................................................................................26

CERTIFICATES

# TABLE OF AUTHORITIES

## Cases

*Cnty. of Butler v. Governor of Pa.*,
  8 F.4th 226 (3d Cir. 2021) ................................................. 19

*Cobell v. Norton*,
  240 F.3d 1081 (D.C. Cir. 2001) ......................................... 12

*Cutler v. Hayes*,
  818 F.2d 879 (D.C. Cir. 1987) ............................... 10, 13, 14

*Grand Canyon Air Tour Coal. v. FAA*,
  154 F.3d 455 (D.C. Cir. 1998) ..................................... 11, 12

*Her Majesty the Queen in Right of Ontario v. EPA*,
  912 F.2d 1525 (D.C. Cir. 1990) ......................................... 12

*In re Am. Rivers & Idaho Rivers United*,
  372 F.3d 413 (D.C. Cir. 2004) ........................................... 12

*In re Barr Lab'ys, Inc.*,
  930 F.2d 72 (D.C. Cir. 1991) ............................................. 16

*In re Cal. Power Exch. Corp.*,
  245 F.3d 1110 (9th Cir. 2001) ............................................. 8

*In re Cheney*,
  406 F.3d 723 (D.C. Cir. 2005) ............................................. 6

*In re Core Commc'ns, Inc.*,
  531 F.3d 849 (D.C. Cir. 2008) ........................................ 6, 12

*In re Int'l Chem. Workers Union*,
  958 F.2d 1144 (D.C. Cir. 1992) ......................................... 13

*In re Monroe Commc'ns Corp.*,
  840 F.2d 942 (D.C. Cir. 1988) ...................................... 12, 19

*In re Pesticide Action Network N. Am.*,
798 F.3d 809 (9th Cir. 2015) ............................................................... 8

*In re Pub. Emps. for Env't Resp.*,
957 F.3d 267 (D.C. Cir. 2020) ....................................................... 12, 16

*In re United Mine Workers of Am. Int'l Union*,
190 F.3d 545 (D.C. Cir. 1999) ........................................................... 12

*Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*,
426 U.S. 394 (1976) ............................................................................ 8

*McClatchy Newspapers*, Inc. *v. NLRB*,
131 F.3d 1026 (D.C. Cir. 1997) ......................................................... 21

*MCI Telecomms. Corp. v. FCC*,
627 F.2d 322 (D.C. Cir. 1980) ........................................................... 10

*Mexichem Specialty Resins, Inc. v. EPA*,
787 F.3d 544 (D.C. Cir. 2015) ........................................................... 10

*Nader v. FCC*,
520 F.2d 182 (D.C. Cir. 1975) ...........................................................12

*Natural Resources Defense Council, Inc. v. SEC*,
606 F.2d 1031 (D.C. Cir. 1979) ................................................... 22, 23

*NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*,
416 U.S. 267 (1974) ..................................................................... 21, 22

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ............................................................................ 20

*Oil, Chem. & Atomic Workers Int'l Union v. Zegeer*,
768 F.2d 1480 (D.C. Cir. 1985) ......................................................... 12

*Oil, Chem. & Atomic Workers Union v. OSHA*,
145 F.3d 120 (3d Cir. 1998) ........................................... 2, 3, 7, 10, 11

*Potomac Elec. Power Co. v. ICC*,
702 F.2d 1026 (D.C. Cir. 1983) ......................................................... 12

*Potomac Elec. Power Co. v. ICC,*
   705 F.2d 1343 (D.C. Cir. 1983) ........................................ 12

*Prometheus Radio Project v. FCC,*
   824 F.3d 33 (3d Cir. 2016) ...............................................11

*Pub. Citizen Health Rsch. Grp. v. Auchter,*
   702 F.2d 1150 (D.C. Cir. 1983) ........................................ 10

*Pub. Citizen Health Rsch. Grp. v. Brock,*
   823 F.2d 626 (D.C. Cir. 1987) ......................................... 12

*Pub. Citizen Health Rsch. Grp. v. Chao,*
   314 F.3d 143 (3d Cir. 2002) ...................................... 11, 13

*Pub. Citizen v. Heckler,*
   602 F. Supp. 611 (D.D.C. 1985) .................................. 13, 14

*SEC v. Ripple Labs, Inc.,*
   No. 20-cv-10832 (S.D.N.Y.) ............................................ 14

*SEC v. Wahi,*
   No. 22-cv-1009 (W.D. Wash.) .......................................... 14

*Shalala v. Guernsey Mem'l Hosp.,*
   514 U.S. 87 (1995) ......................................................... 22

*Telecomms. Rsch. & Action Ctr. v. FCC,*
   750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*") ..................... 3, 6, 12

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp.*
   *Workers v. Fed. R.R. Admin.*, 10 F.4th 869 (D.C. Cir. 2021) ........................... 21

## Statutes

<u>Administrative Procedure Act, 5 U.S.C. 551, et seq</u>

   5 U.S.C. 552b ................................................................. 19

   5 U.S.C. 553(e) ............................................................... 3

Securities Act of 1933, 15 U.S.C. 77a, et seq.

    Section 19(a), 15 U.S.C. 77s(a) ................................................................ 3

Securities Exchange Act of 1934, 15 U.S.C. 78a, et seq.

    Section 3(b), 15 U.S.C. 78c(b) ................................................................ 3

    Section 4A, 15 U.S.C. 78d-1 ................................................................ 19

    Section 23(a), 15 U.S.C. 78w(a) ............................................................ 3

    Section 25(a)(1), 15 U.S.C. 78y(a)(1) .................................................... 2

Trust Indenture Act of 1939, 15 U.S.C. 77aaa, et seq.

    Section 319(a), 15 U.S.C. 77sss(a) ........................................................ 3

    Section 319(b), 15 U.S.C. 77sss(b) ........................................................ 3

Investment Company Act of 1940, 15 U.S.C. 80a-1, et seq.

    Section 38(a), 15 U.S.C. 80a-37(a) ........................................................ 3

    Section 39, 15 U.S.C. 80a-38 ................................................................ 3

Investment Advisers Act of 1940, 15 U.S.C. 80b-1, et seq.

    Section 211(a), 15 U.S.C. 80b-11(a) ...................................................... 3

    Section 211(b), 15 U.S.C. 80b-11(b) ...................................................... 3

42 U.S.C. 7671a(c)(3) ................................................................................ 9

42 U.S.C. 7671e(b) .................................................................................... 9

42 U.S.C. 7671j(e) ..................................................................................... 9

49 U.S.C. 106(f)(3)(A) .............................................................................. 9

## Regulations

17 C.F.R. 200.10 ...................................................................................... 19

17 C.F.R. 200.7354(d)(2)(ii)(A) ............................................................... 20

17 C.F.R. 201.192(a) ...................................................................... 3, 4, 19, 20

## Commission Releases

*Report of Investigation Pursuant to Section 21(a) of the Securities
    Exchange Act of 1934: The DAO,*
    Release No. 81207, 2017 WL 7184670 (July 25, 2017) ....................................24

*Arca U.S. Treasury Fund,*
    Release No. 34026, 2020 WL 5746893 (Sept. 24, 2020) ................................ 24

*In re Arca U.S. Treasury Fund,*
    Release No. 34055, 2020 WL 6157838 (Oct. 20, 2020) ...................................24

*Custody of Digital Asset Securities by Special Purpose Broker-Dealers,*
    86 Fed. Reg. 11627 (Feb. 26, 2021) ................................................... 24

*BOX Exchange Order,*
    Release No. 94092, 2022 WL 294298 (Jan. 27, 2022)......................................25

*Regulation Best Execution,*
    88 Fed. Reg. 5440 (proposed Jan. 27, 2023) ......................................... 6, 18, 25

*Regulatory Flexibility Agenda,*
    88 Fed. Reg. 11376 (Feb. 22, 2023) .................................................. 16

*Safeguarding Advisory Client Assets,*
    88 Fed. Reg. 14672 (proposed Mar. 9, 2023) ................................................. 18

*Cybersecurity Risk Management Rule,*
    88 Fed. Reg. 20212 (proposed Apr. 5, 2023) .................................................. 17

*Regulation Systems Compliance and Integrity,*
    88 Fed. Reg. 23146 (proposed Apr. 14, 2023) ................................................. 17

*Supplemental Information and Reopening of Comment Period for Amendments
    to Exchange Act Rule 3b-16 Regarding the Definition of "Exchange,"*
    Exchange Act Release No. 97309, 2023 WL 3173141 (Apr. 14, 2023)............17

## Other Authorities

2022 SEC Agency Fin. Rep. 132,
    https://www.sec.gov/files/sec-2022-agency-financial-report.pdf ......................16

Coinbase Comment Letter on Petition for Rulemaking on Digital Asset
    Securities Regulation (May 3, 2023),
    https://www.sec.gov/comments/4-789/4789-184339-337942.pdf .................6, 9

Coinbase Comment Letter on Safeguarding Advisory Client Assets,
    Proposed Rule 223-1 (May 8, 2023),
    https://www.sec.gov/comments/s7-04-23/s70423-189159-371082.pdf ............18

Comments on Petition for Rulemaking on Digital Asset Securities Regulation,
    *Meetings with SEC Officials*, SEC.gov, https://www.sec.gov/comments/
    4-789/4-789.htm#meetings (last modified May 4, 2023) ...................................6

Comments on Petition for Rulemaking on Digital Asset Securities Regulation,
    *Submitted Comments*, SEC.gov, https://www.sec.gov/comments/4-789/
    4-789.htm (last modified May 4, 2023) ...............................................................5

Framework for "Investment Contract" Analysis of Digital Assets,
    https://www.sec.gov/corpfin/framework-investment-contract-analysis-
    digital-assets (last modified March 8, 2023) .....................................................25

Gary Gensler, Chair, SEC, *Prepared Remarks on Crypto Markets*
    *at the Penn Law Capital Markets Association Annual Conference*
    (Apr. 4, 2022), https://www.sec.gov/news/speech/gensler-remarks-crypto-
    markets-040422 . ...............................................................................................20

Louis Loss, Joel Seligman & Troy Paredes, *Fundamentals of Securities*
    *Regulation* 13.E (6th ed. 2022) ........................................................................ 3

Press Release, SEC, *SEC Announces Enforcement Results for FY22*
    (Nov. 15, 2022), https://www.sec.gov/news/press-release/2022-206 ................16

Richard J. Pierce, Jr., *Administrative Law Treatise* § 14.3.1
   (6th ed. last updated Nov. 2022).................................................................16, 17

SEC Staff Accounting Bulletin No. 121, 87 Fed. Reg. 21016
   (Apr. 11, 2022) ........................................................................................25

# INTRODUCTION

Mandamus is an extraordinary remedy—one that requires the petitioner to show a clear and indisputable right to relief.  Coinbase does not and cannot demonstrate such a right.  Neither the securities laws nor the Administrative Procedure Act ("APA") impose on the Securities and Exchange Commission ("SEC" or "Commission") an obligation to issue the broad new regulations regarding "digital assets" Coinbase has requested.  Perhaps recognizing this, Coinbase instead asserts that this Court should compel the Commission to act on Coinbase's recently filed rulemaking petition.  But no statute or regulation requires the Commission to take such action on a specific timeline.  Nor is there any precedent supporting Coinbase's request.  In these circumstances, Coinbase cannot meet the high bar for mandamus relief.

The rulemaking petition as to which Coinbase seeks an immediate determination asks the Commission to take a series of discretionary actions to replace existing applicable securities laws and regulations with a comprehensive new regulatory regime for the trading of crypto assets that are securities.  As Coinbase's own submissions make clear, considering the various paths it suggests is a necessarily complicated endeavor.  Yet Coinbase filed its rulemaking petition fewer than ten months ago, supplemented aspects of the petition fewer than three months ago, and sought to supplement the record again only weeks ago.

1

Coinbase nonetheless claims that mandamus is appropriate because—in its telling—the Commission has secretly decided to deny the petition but is refusing to say so to avoid judicial review.  This claim is baseless.  The Commission continues to consider Coinbase's petition in the ordinary course.  Coinbase is also incorrect that the Commission's enforcement of existing legal requirements predetermines any decision whether to engage in rulemaking.  Agencies routinely enforce existing rules while considering further amendments to regulatory requirements.  Moreover, the Commission's ongoing regulatory efforts regarding crypto assets that are securities or offered and sold as such—including the solicitation of comments from the public across numerous fronts—belie the assertion of closed-mindedness on which Coinbase's petition depends.  Coinbase's preference for faster or different regulatory action by the Commission does not entitle it to extraordinary relief from this Court.

The petition should be denied.

## JURISDICTIONAL STATEMENT

Section 25(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") provides that all "final order[s]" of the Commission are subject to the exclusive jurisdiction of the court of appeals.  15 U.S.C. 78y(a)(1).  "[W]here administrative enabling statutes … grant exclusive jurisdiction to a particular court to review past actions of an agency, that court necessarily has the exclusive jurisdiction to review

inaction as well." *Oil, Chem. & Atomic Workers Union v. OSHA*, 145 F.3d 120, 123 (3d Cir. 1998) (citing *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 75 (D.C Cir. 1984) ("*TRAC*")).

## BACKGROUND

1. "Each of the basic [securities] statutes authorizes the Commission to adopt whatever rules and regulations may be necessary to carry out its statutory functions."  Louis Loss, Joel Seligman & Troy Paredes, *Fundamentals of Securities Regulation* 13.E (6th ed. 2022).[1]  While Congress thus provided the Commission with broad rulemaking authority, it did not—unlike in some other statutory schemes—expressly address rulemaking petitions.  The APA, however, generally allows members of the public to petition an agency to promulgate, amend, or repeal rules.  *See* 5 U.S.C. 553(e).  And under the Commission's Rules of Practice, "[a]ny person desiring the issuance, amendment or repeal of a rule of general application may file a petition therefor with the Secretary."  17 C.F.R. 201.192(a).  The Secretary is directed to acknowledge receipt of the petition and "refer it to the appropriate division or office for consideration and

---

[1] *See* Section 19(a) of the Securities Act of 1933, 15 U.S.C. 77s(a); Sections 3(b) and 23(a) of the Exchange Act, 15 U.S.C. 78c(b), 78w(a); Sections 319(a) and (b) of the Trust Indenture Act of 1939, 15 U.S.C. 77sss(a), (b); Sections 38(a) and 39 of the Investment Company Act of 1940, 15 U.S.C. 80a-37(a), 80a-38; Sections 211(a) and (b) of the Investment Advisers Act of 1940, 15 U.S.C. 80b-11(a), (b).

recommendation.  Such recommendations shall be transmitted with the petition to the Commission for such action as the Commission deems appropriate." *Id.*  The Rules do not set a deadline for responding to petitions.

2.  Coinbase filed its petition in July 2022, "requesting that the Commission propose and adopt rules to govern the regulation of securities that are offered and traded via digitally native methods, including potential rules to identify which digital assets are securities."  Add. 2–33.[2]  The petition seeks Commission action addressing a wide variety of topics that bear on each of the principal securities Acts, including:

- Standards for the classification of crypto assets as securities (Add. 8–13);

- Requirements for the issuance of crypto asset securities (Add. 13–16);

- Disclosure obligations of crypto asset securities issuers (Add. 16–18);

- Standards and registration requirements for trading crypto assets on national securities exchanges (Add. 18–21);

- Custody of crypto assets (Add. 21–23);

- Broker-dealers who effect transactions in crypto asset securities (Add. 23–26);

- Transfer agents who record changes in ownership of crypto asset securities (Add. 26–27); and

---

[2] "Add." refers to the addendum filed by Coinbase alongside its petition for mandamus (ECF No. 1-1).  For purposes of this brief, the Commission does not distinguish between the terms "digital asset" and "crypto asset."

- Clearing-agency status as applied to blockchains (Add. 27–29).

The petition does not include detailed rule proposals or draft rule text. Instead, it requests that the Commission answer 50 "[k]ey" and "detailed" questions (Add. 5, 8) as part of overhauling the existing regulatory regime that governs the "offer, sale, trading, custody, and clearing" of securities (Add. 2). Coinbase's 50 questions, in turn, contain 60 separately delineated subquestions. And, for each, Coinbase suggests a variety of possible Commission actions, including convening public roundtables, issuing requests for comment, issuing concept releases, engaging in eventual rulemaking, granting exemptive relief, or taking no-action positions.  Add. 4, 9, 29.

After Coinbase submitted its petition, the Commission's Office of the Secretary opened a file (No. 4-789) and began accepting public comments.[3]  To date, the Commission has received 1,683 form-letter comments and eight other comments, three of which have come from Coinbase itself.  More specifically, Coinbase provided extensive additional comments on December 6, 2022 (Add. 34–44) (11 pages proposing a framework for registration and reporting by crypto asset issuers), March 20, 2023 (Add. 45–62) (18 pages discussing crypto assets and

---

[3] *See* Comments on Petition for Rulemaking on Digital Asset Securities Regulation, *Submitted Comments*, SEC.gov, https://www.sec.gov/comments/4-789/4-789.htm (last modified May 4, 2023).

"staking"), and—after this mandamus petition was filed—on May 3, 2023 (discussing Coinbase's comment on the Commission's proposed revisions to Regulation Best Execution).[4]  Coinbase has also participated in dozens of meetings to discuss its petition, including—by its own telling—"more than 30 meetings in the past year" (Pet. 14).[5]

## REASONS FOR DENYING THE PETITION

The "central question in evaluating" Coinbase's claim "is 'whether the agency's delay is so egregious as to warrant mandamus.'"  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 79).  To obtain the "drastic" remedy of mandamus—which is "available only in extraordinary situations"—a petitioner "must have a clear and indisputable right to relief; and even if [it] overcomes all the[] hurdles, whether mandamus relief should issue is discretionary."  *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc) (internal quotation marks omitted).

---

[4] Coinbase Comment Letter on Petition for Rulemaking on Digital Asset Securities Regulation (May 3, 2023), https://www.sec.gov/comments/4-789/4789-184339-337942.pdf; *see also Regulation Best Execution*, 88 Fed. Reg. 5440 (proposed Jan. 27, 2023).

[5] *See also* Comments on Petition for Rulemaking on Digital Asset Securities Regulation, *Meetings with SEC Officials*, SEC.gov, https://www.sec.gov/comments/4-789/4-789.htm#meetings (last modified May 4, 2023).

Coinbase has identified no such egregious delay warranting the extraordinary relief it seeks from this Court. Mere months have passed since Coinbase's petition was filed and even less time has elapsed since Coinbase supplemented the record. There are no statutory or regulatory deadlines requiring the Commission to take action on the petition on a specific timeline, and Coinbase cannot persuasively claim any cognizable harm from the fact that the Commission has not acted on the petition during the short time it has been pending. *See Oil, Chem. & Atomic Workers Union*, 145 F.3d at 122–23.

Coinbase attempts an end run around the clear precedent foreclosing relief in these circumstances by arguing that all the Commission needs to do is memorialize its denial of Coinbase's petition—a decision Coinbase incorrectly asserts has already been made. But it is undisputed that there has not been any final agency action on its petition, and Coinbase's argument is largely premised on the erroneous view that recent Commission enforcement actions indicate a Commission decision not to engage in rulemaking. But the Commission can—and often does—enforce existing legal requirements while also considering further amendments to those requirements. Nor does pursuing that path thwart judicial review; enforcement actions proceed in district court and provide the parties and potential *amici* with the opportunity to pursue any arguments that existing provisions should not be applied to crypto assets that are securities.

I.    **Coinbase is not entitled to the extraordinary relief it seeks.**

"The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976).  The party seeking a writ of mandamus bears the burden of proving that its right to issuance of the writ is "clear and indisputable." *Id.* at 403 (internal quotation marks omitted).  Neither the securities laws nor the Commission's Rules of Practice establish a deadline for responding to petitions for rulemaking.  And the timing here—a matter of mere months since Coinbase filed its rulemaking petition—is well within the bounds of reasonableness.  There is no support in precedent for requiring the Commission to act on the timeline Coinbase seeks to impose.

This is not one of "those rare instances when the agency's delay is 'egregious,'" warranting mandamus.  *In re Pesticide Action Network N. Am.*, 798 F.3d 809, 813 (9th Cir. 2015) (quoting *In re Cal. Power Exch. Corp.*, 245 F.3d 1110, 1124 (9th Cir. 2001)).  Deliberating over the kind of significant changes sought by Coinbase, which could affect both crypto assets and the securities markets more generally, takes time—including, as here, time to weigh whether or not to initiate a rulemaking proceeding about such topics in the first instance.  This is particularly true given the Commission's active regulatory and enforcement agenda in this area (*see infra* 17–18, 24–25, 14), as these efforts may yield

information useful in the Commission's consideration of the issues raised in Coinbase's petition.

Indeed, Coinbase is still actively engaged in supplementing the record on its petition for rulemaking—belying its assertion that the Commission has unreasonably delayed in deciding it. Not even ten months have passed since Coinbase initially filed its broad rulemaking petition, which seeks a wide range of rulemaking activity involving many statutory and existing regulatory provisions. Several months later—in December 2022—Coinbase refined and supplemented its petition regarding how to regulate investment contracts involving crypto assets. *See* Add. 34–44. On March 20, 2023, Coinbase made an additional submission relating to staking services and blockchains—a topic not covered in its initial petition at all. *See* Add. 45–62. And, finally, it further supplemented the record just two weeks ago to address its concerns regarding Regulation Best Execution. *See* Coinbase Comment Letter (May 3, 2023), *supra* 6 n.4.

There is no provision in the securities laws mandating that the Commission adopt rules such as those suggested by Coinbase, much less a statutory deadline by which it must do so.[6] Coinbase thus asks this Court to impose an artificially

---

[6] *Compare* 42 U.S.C. 7671a(c)(3), 7671e(b), 7671j(e) (prescribing deadlines for the Environmental Protection Agency to act on rulemaking petitions under the Clean Air Act); 49 U.S.C. 106(f)(3)(A) (specifying deadlines for the Federal Aviation Administration to act on rulemaking petitions).

constrained timeline on the Commission's discretionary rulemaking agenda. But "[a]bsent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable of its proceedings is entitled to considerable deference." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (internal quotation marks omitted); *see also Cutler v. Hayes*, 818 F.2d 879, 897 (D.C. Cir. 1987) (reasonableness of delay "must be judged in the context of the statute which authorizes the agency's action" and this "entails an examination of any legislative mandate in the statute and the degree of discretion given the agency by Congress") (internal quotation marks omitted).[7]

Nor is there any support in this Court's cases for the issuance of a writ requiring more accelerated action. In *Oil, Chemical & Atomic Workers Union*, for example, this Court found no undue delay where mandamus was sought five years after a petition was filed and three years after the agency's self-imposed deadline to act. 145 F.3d at 122. As the Court explained, the petition "would have us

---

[7] The securities laws are not analogous to other statutory schemes that courts have found to imply a need for expeditious action. *Cf. MCI Telecomms. Corp. v. FCC*, 627 F.2d 322, 340 (D.C. Cir. 1980) ("[T]he entire ratemaking procedure in the 1934 Communications Act … assumes that rates will be finally decided within a reasonable time encompassing months, occasionally a year or two, but not several years or a decade."); *Pub. Citizen Health Rsch. Grp. v. Auchter*, 702 F.2d 1150, 1153–54, 1153 n.10 (D.C. Cir. 1983) (per curiam) (holding that an agency's more than three-year delay in commencing a rulemaking was unreasonable where underlying statute instructed that "the Secretary shall give due regard to the urgency of the need for [worker safety standards]").

intrude into the quintessential discretion of the Secretary" to "allocate
[Occupational Safety and Health Administration's ("OSHA")] resources and set its
priorities." *Id.* at 123. And it noted that the agency had gathered a "wealth of
data" that it was in the process of analyzing. Given the difficulty of the task, the
agency's expertise, and the competing demands on the agency's resources, "this
Court [was] not in a position to tell the Secretary how to do her job." *Id.* at 124.

Rather, it was not until a subsequent case argued "nine years after OSHA
initially announced its intention to begin the rulemaking process," where "OSHA's
counsel admitted the possibility that OSHA might not promulgate a rule for
another ten or twenty years, if at all," that the Court found relief appropriate. *Pub.
Citizen Health Rsch. Grp. v. Chao*, 314 F.3d 143, 145 (3d Cir. 2002). Similarly,
*Prometheus Radio Project v. FCC*, 824 F.3d 33 (3d Cir. 2016), addressed a
12-year delay by the Federal Communications Commission in revising certain
rules, despite a statute requiring review of the rules every four years. *Id.* at 48,
50–51. And even in that circumstance, the Court pointed to the presence of
additional factors such as multiple prior judicial decisions finding the agency delay
unreasonable and ordering the FCC to act.

Precedent in other circuits does not support mandamus in these
circumstances either. Indeed, courts have found much longer delays reasonable.
*See, e.g.*, *Grand Canyon Air Tour Coal v. FAA*, 154 F.3d 455, 477–78 (D.C. Cir.

11

1998) (declining to intervene notwithstanding a 10-year delay in issuing a rule and 20-year delay to achieve the rule's statutory objective); *Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525, 1534 (D.C. Cir. 1990) (delay of "more than nine years" not unreasonable); *In re Monroe Commc'ns Corp.*, 840 F.2d 942, 945–47 (D.C. Cir. 1988) (delay of several years did not warrant mandamus); *TRAC*, 750 F.2d at 80–81 (delays of two and five years did not warrant mandamus); *Oil, Chem. & Atomic Workers Int'l Union v. Zegeer*, 768 F.2d 1480, 1487–88 (D.C. Cir. 1985) (dismissing mandamus petition upon showing, after five year-delay, that agency would complete rulemaking within two years).[8]

---

[8] Likewise, cases in which courts *have* ordered mandamus relief involve periods much lengthier than the one here. *See In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 273 (D.C. Cir. 2020) ("For nineteen years, the agencies have failed to comply with their statutory mandate."); *In re Core*, 531 F.3d at 857 (six-year delay in issuing a justification for a rule after the rule was remanded without vacatur); *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419–20 (D.C. Cir. 2004) (delay of six-plus years was unreasonable); *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 551–54 (D.C. Cir. 1999) (noting that the court ordered an agency to produce timetable for promulgating final rule after an eight-year delay); *Pub. Citizen Health Rsch. Grp. v. Brock*, 823 F.2d 626, 629 (D.C. Cir. 1987) (per curiam) (A five-year delay in promulgating a final rule "treads at the very lip of the abyss of unreasonable delay."); *Cobell v. Norton*, 240 F.3d 1081, 1095–97 (D.C. Cir. 2001) (holding that even though statute did not set specific deadlines, agency unreasonably delayed addressing plaintiff's rights by failing to discharge its legally obligatory duties for more than six years); *Potomac Elec. Power Co. v. ICC*, 702 F.2d 1026, 1033–35 (D.C. Cir. 1983) (requiring agency to act after ten-year delay), *supplemented*, 705 F.2d 1343 (D.C. Cir. 1983) (per curiam); *Nader v. FCC*, 520 F.2d 182, 205–07 (D.C. Cir. 1975) (delay of ten years was unreasonable).

Coinbase suggests that it will be harmed because it "cannot adequately structure [its] businesses and plan for the future" in the absence of new regulation. Pet. 20. But Coinbase's assertions regarding a purported lack of guidance are both incorrect (*see infra* 17–18, 24–25, describing guidance and regulatory action by the Commission related to crypto assets), and insufficient to justify mandamus.

In assessing whether there is harm from delay, courts often give more weight to threats to health and safety. *See Cutler*, 818 F.2d at 898 & n.162 (collecting cases); *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (per curiam) (six-year delay of rulemaking relating to cadmium was "an extraordinarily long time, in light of the admittedly serious health risks associated with the current permissible levels of cadmium exposure under the twenty-year-old standards still in place"); *Chao*, 314 F.3d at 146 (granting mandamus where dangers of the chemical to be regulated "include[d] ulceration of the stomach and skin, necrosis, perforation of the nasal septum, asthma, and dermatitis," as well as cancer). Indeed, in one of the few cases involving a delay of less than a year, the district court pointed to known health risks in ordering the Department of Health and Human Services to act on a petition involving domestic sales of raw milk. *See Pub. Citizen v. Heckler*, 602 F. Supp. 611 (D.D.C. 1985). But even there, the government had been collecting data on the health risks of consuming raw milk for

a decade and the government had not acted on a related proposed rule for over a year. *Id.* at 612.

While purported economic harm will sometimes be sufficient to "justify court intervention" (*Cutler*, 818 F.2d at 898 & n.161), there is no such cognizable harm here. Coinbase does not really claim to be harmed by the ten months that have elapsed since it filed its petition. *See* Pet. 20 ("It is not the length of the SEC's delay in isolation that renders its inaction here unreasonable."). Rather, Coinbase asserts that the delay precludes "judicial scrutiny" of the Commission's enforcement approach in this area, with which it disagrees. Pet. 20–21. Contrary to this assertion, such scrutiny occurs in the very enforcement actions Coinbase criticizes; any litigant or *amicus* participating in those cases can raise disagreements with the Commission's interpretations of existing securities laws— including any concerns about notice—in the district courts and on appeal, as Coinbase itself has repeatedly done. *See, e.g.*, Pet. 11 (citing Brief of *Amicus Curiae* Coinbase, Inc. in Support of Defendants Ishan Wahi and Nikhil Wahi's Motion to Dismiss, *SEC v. Wahi*, No. 22-cv-1009 (W.D. Wash. Apr. 3, 2023), ECF No. 104); *Amicus Curiae* Brief of Coinbase, Inc. in Support of Defendants' Fair Notice Defense, *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832 (S.D.N.Y. Nov. 14, 2022), ECF No. 705.

Several additional factors counsel against granting relief.

14

First, the acknowledged complexity of Coinbase's proposals undermines its request for accelerated relief.  Coinbase itself recognizes the enormity of the undertaking its petition contemplates—a complete "rethinking and reframing" of existing securities regulation (Add. 8)—and states that the petition implicates the "difficult and complex legal, policy, and technical considerations relating to the application of the existing federal securities law regime" to crypto asset securities (Add. 29).  *See also* Add. 30 (regulation of crypto assets raises "complex and novel issues"); Add. 4 (describing "large, novel, or complicated issues" associated with the regulation of crypto assets); Add. 5 (recognizing that questions will be "challenging to solve").  Coinbase proposes that the Commission achieve a "paradigm shift" (Add. 2) that fully replaces the "plumbing for financial transactions" across the national securities market system (Add. 7) by using rulemaking, requests for comment, exemptive authority, concept releases, interpretive guidance, no-action relief, advisory committees, and public roundtables (Add. 4, 9, 29).  All the while, the petition requests that the Commission also coordinate with various executive agencies, Congress, other nations, and banking regulators—whose work on crypto assets Coinbase recognizes "has only just begun."  Add. 2, 29–30.

Second, the Commission has limited resources, which it has appropriately directed to its robust regulatory and enforcement agenda, among other priorities.

"[T]he number of rulemaking activities on the SEC's regulatory agenda between spring 2017 and spring 2022 increased overall" and "in only the first 8 months of 2022, the SEC proposed 26 new rules, which was more than twice as many new rules as proposed the preceding year and more than it had proposed in each of the previous 5 years." 2022 SEC Agency Fin. Rep. 132[9]; *see also Regulatory Flexibility Agenda*, 88 Fed. Reg. 11376 (Feb. 22, 2023) (summarizing the Chair's rulemaking priorities). Moreover, the Commission "filed 760 total enforcement actions in fiscal year 2022, a 9 percent increase over the prior year." Press Release, SEC, *SEC Announces Enforcement Results for FY22* (Nov. 15, 2022).[10] The relief requested in the petition would thus improperly "put the petitioner 'at the head of the queue' while 'mov[ing] all others back one space.'" *In re Pub. Emps. for Env't Resp.*, 957 F.3d at 275 (alteration in original) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also* Richard J. Pierce, Jr., *Administrative Law Treatise* § 14.3.1 (6th ed. last updated Nov. 2022) (explaining that the Court should "focus not on the detail of the agency's method of proceeding with respect to the particular matter, but rather on a broad assessment of the temporal urgency of that matter in comparison with the temporal urgency of the

---

[9] *Available at* https://www.sec.gov/files/sec-2022-agency-financial-report.pdf.

[10] *Available at* https://www.sec.gov/news/press-release/2022-206.

16

scores, hundreds, or even thousands of other matters for which the agency has decisionmaking responsibility").

Third, as a part of the Commission's overall regulatory agenda, it is also pursuing a number of actions that concern crypto assets that are securities. These include:

- *Supplemental Information and Reopening of Comment Period for Amendments to Exchange Act Rule 3b-16 Regarding the Definition of "Exchange,"* Exchange Act Release No. 97309, 2023 WL 3173141 (Apr. 14, 2023) (inviting public comment on the application of securities exchange registration requirements to purportedly decentralized finance systems transacting in crypto asset securities);

- *Regulation Systems Compliance and Integrity*, 88 Fed. Reg. 23146, 23166–68 (proposed Apr. 14, 2023) (discussing application of certain rules to crypto asset securities);

- *Cybersecurity Risk Management Rule*, 88 Fed. Reg. 20212, 20278–79 (proposed Apr. 5, 2023) (discussing cybersecurity risk related to crypto assets);

- *Safeguarding Advisory Client Assets*, 88 Fed. Reg. 14672, 14688–90 (proposed Mar. 9, 2023) (addressing investment advisers' obligation to safeguard clients' crypto asset securities);[11] and

- *Regulation Best Execution*, 88 Fed. Reg. at 5540–42, 5448–49 (requesting public comment concerning broker-dealer customer orders for crypto asset securities).

The information gathered from any or all of these efforts could inform the Commission's consideration of its regulatory approach in this area, including its consideration of the regulatory approaches suggested in Coinbase's petition. The Commission thus reasonably continues to consider that petition in the context of these other initiatives. At this early stage, fewer than ten months after filing and mere weeks after the latest effort to supplement the record, the APA does not require more.

## II. Coinbase's contention that the Commission is unreasonably withholding a decision already made is meritless.

Despite the clear weight of the precedent against it, Coinbase contends that mandamus is appropriate because the Commission's conduct here is "per se unreasonable." Pet. 16. In its view, the Commission has "already decided

---

[11] *See* Coinbase Comment Letter on Safeguarding Advisory Client Assets, Proposed Rule 223-1 (May 8, 2023), https://www.sec.gov/comments/s7-04-23/s70423-189159-371082.pdf.

18

internally to deny Coinbase's petition, and is simply withholding a formal decision from Coinbase and the public, with the effect (and perhaps intent) of frustrating judicial review." Pet. 5, 16. These assertions are baseless.

As already discussed, the Commission is actively considering its regulatory approaches in this area, including the paths suggested in Coinbase's petition. This is thus not a case involving "the unusual circumstance of an unrebutted allegation of [government] bad faith." *In re Monroe*, 840 F.2d at 946–47. And this Court "generally presume[s] that government officials act in good faith." *Cnty. of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021).

In arguing to the contrary, Coinbase points to comments from the Commission's Chair involving crypto assets. Pet. 2 n.2, 10–11 & nn.15–17, 12–13 & nn.21–22. But those comments did not—and could not—constitute agency action denying Coinbase's rulemaking petition. The Commission as a body acts, in relevant respects, through a majority vote of a quorum of its five Commissioners. *See* 17 C.F.R. 200.10; 5 U.S.C. 552b (requiring public votes on most topics); 15 U.S.C. 78d-1 (no authority for "the delegation of the function of rulemaking"); *see also* 17 C.F.R. 201.192(a) (providing that the Secretary shall

notify petitioner of the Commission's action on a rulemaking petition).[12]  And

remarks from one member of the Commission (including the Chair) represent only

the views of that member.  17 C.F.R. 200.735-4(d)(2)(ii)(A); *see also, e.g.*, Gary

Gensler, Chair, SEC, *Prepared Remarks on Crypto Markets at the Penn Law

Capital Markets Association Annual Conference* (Apr. 4, 2022) (cited at Pet. 13

n.22) ("As is customary, I'd like to note that my views are my own, and I'm not

speaking on behalf of the Commission or SEC staff.").[13]  There is simply no basis

from which to conclude that such remarks amount to a *sub silentio* denial of

Coinbase's petition.

    Coinbase also contends that the Commission's choice to pursue enforcement

actions in this area somehow proves that the Commission "has no intention of

conducting rulemaking."  Pet. 15.  But Coinbase's argument fundamentally

misunderstands agency enforcement and rulemaking, which are not inherently

inconsistent.

---

[12] The Supreme Court has rejected the argument that an agency's inaction on a rulemaking petition is the same as a denial of that petition.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) ("A 'failure to act' is not the same thing as a 'denial.'  The latter is the agency's act of saying no to a request; the former is simply the omission of an action without formally rejecting a request—for example, the failure to promulgate a rule or take some decision by a statutory deadline.").

[13] *Available at* https://www.sec.gov/news/speech/gensler-remarks-crypto-markets-040422.

First, there is no merit to Coinbase's suggestion that the Commission could not pursue *both* enforcement actions involving crypto asset securities *and* rulemaking because, according to Coinbase, the initiation of a rulemaking would represent a concession that current "requirements are insufficiently clear or workable." Pet. 17. The Commission could reasonably conclude, for example, that an actor in the securities industry had violated existing, applicable regulatory requirements while simultaneously engaging in rulemaking to assess whether there were reasonable policy justifications for modifying those requirements in the future.

Second, there is likewise no force to the argument that any enforcement actions that the Commission brings while Coinbase's rulemaking petition is pending somehow "transgress[]" the "due process and fair notice" otherwise provided through rulemaking. Pet. 11. It is well established that "[a]gencies do not ordinarily have to regulate a particular area all at once" (*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 875 (D.C. Cir. 2021)), and "agencies are entitled, just as courts, to proceed case by case" (*McClatchy Newspapers, Inc. v. NLRB*, 131 F.3d 1026, 1035 (D.C. Cir. 1997)).

Coinbase's only cited case on this score (*see* Pet. 21, citing *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267 (1974)), is not to the contrary.

While the Supreme Court there stated that "there may be situations where [an agency's] reliance on adjudication would amount to an abuse of discretion" (*Bell Aerospace*, 416 U.S. at 294), it did not find such an abuse in that case. Instead, it stated that the agency there "ha[d] reason to proceed with caution, developing its standards in a case-by-case manner with attention to the specific" facts at issue, and that its "judgment that adjudication best serves this purpose is entitled to great weight." *Id.* And the Supreme Court later cited *Bell Aerospace* for the proposition that "[t]he APA does not require that all the specific applications of a rule evolve by further, more precise rules rather than by adjudication." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 96 (1995).

Coinbase also overlooks the extent to which case-by-case litigation and rulemaking can beneficially inform one another. The D.C. Circuit addressed this issue in *Natural Resources Defense Council, Inc. v. SEC*, 606 F.2d 1031 (D.C. Cir. 1979), where it reversed a district court order holding that the Commission had acted arbitrarily and capriciously by denying a rulemaking petition. *Id.* at 1035–36. The challengers had "petitioned the SEC to promulgate rules requiring corporate disclosure of environmental and equal employment information." *Id.* at 1036. One of the sought-after rules would have required companies to disclose to shareholders certain employment information already shared with the Equal Employment Opportunity Commission. The SEC denied this request,

22

explaining that if such data were "as significant as the rulemaking petitioners …

contend[ed], then its disclosure [was] already required under existing rules" and

"[t]he precise working out of the particular … data disclosure requirements could

be left to case-by-case adjudication under those existing rules." *Id.* at 1062.  The

D.C. Circuit held that the record, "far from undercutting the reasonableness of this

approach, demonstrate[d] its potential utility." *Id.*  As the court put it, "[t]he SEC

may rationally choose to proceed by adjudication for a reasonable period of time,

which will provide it with the experience enabling it to determine at a later date

whether something other than a [current] rule is necessary or desirable." *Id.*

Similarly here, judicial determinations made on a case-by-case basis in the

crypto-asset space (in addition to the various rulemakings already underway

involving crypto asset securities) may inform the Commission's consideration of

other regulatory action, including that suggested in Coinbase's petition.  And

contrary to Coinbase's claim that the Commission seeks to surreptitiously avoid

judicial scrutiny (*see* Pet. 21), the Commission has pursued enforcement cases in

federal court and litigants are fully capable of testing their views of the securities

laws both in district court and on appeal.

Moreover, contrary to the contentions of Coinbase and *amici*,[14] the

Commission is actively taking regulatory measures beyond enforcement actions.

In addition to the proposed regulations and enforcement actions already discussed,

for example, the Commission has issued an investigative report explaining that

crypto assets can be offered and sold as securities and by persons who act as a

securities exchange[15]; issued a no-action statement and request for comment

regarding the custody of crypto asset securities by broker-dealers[16]; granted an

exemption for an investment company that issued its shares as crypto securities[17];

and approved a national securities exchange's proposal to record and disseminate

---

[14] *See, e.g.*, Pet. 15 (The Commission "has demonstrated" through its enforcement actions "that it has no intention of conducting rulemaking."); *see also* Chamber of Commerce *Amicus* Br. 10; Crypto Council *Amicus* Br. 9.

[15] *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, Release No. 81207, 2017 WL 7184670 (July 25, 2017).

[16] *Custody of Digital Asset Securities by Special Purpose Broker-Dealers*, 86 Fed. Reg. 11627 (Feb. 26, 2021); *see* Add. 24–25.

[17] *Arca U.S. Treasury Fund*, Release No. 34026, 2020 WL 5746893 (Sept. 24, 2020); *In re Arca U.S. Treasury Fund*, Release No. 34055, 2020 WL 6157838 (Oct. 20, 2020).

information regarding orders and executions on a market data feed using a

blockchain system.[18]

\*　　\*　　\*

That Coinbase would like its policy preferences addressed immediately does

not entitle it to extraordinary relief ordering the Commission to act on a

rulemaking petition that has been pending for well under a year.

---

[18] *BOX Exchange Order*, Release No. 94092, 2022 WL 294298 (Jan. 27, 2022). In addition to these Commission-level actions, Commission staff have issued non-binding, non-precedential guidance regarding crypto asset securities. *See, e.g.*, Framework for "Investment Contract" Analysis of Digital Assets, https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets (last modified March 8, 2023); SEC Staff Accounting Bulletin No. 121, 87 Fed. Reg. 21016 (Apr. 11, 2022); 88 Fed. Reg. at 5448 n.96. *See also* Add. 10–12, 14, 25–26.

## CONCLUSION

The Court should deny the petition for mandamus.

Respectfully submitted,

MEGAN BARBERO
General Counsel

MICHAEL A. CONLEY
Solicitor

TRACEY A. HARDIN
Assistant General Counsel

/s/ David D. Lisitza
DAVID D. LISITZA
Senior Appellate Counsel

DANIEL T. YOUNG
Appellate Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
202-551-5015 (Lisitza)
lisitzad@SEC.gov

May 2023

# CERTIFICATES

I hereby certify that:

1.    I am an attorney representing a federal government agency.  I am also admitted to the bar of this Court.  *See* 3d Cir. L.A.R. 46.1(e).

2.    This brief complies with applicable type-volume limitations, *see* Fed. R. App. P. 21(d)(1), because this brief contains less than 7,800 words—specifically, 5,610 words.

3.    This brief complies with applicable typeface requirements, *see* Fed. R. App. P. 32(a)(5), and type style requirements, *see* Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

4.    The electronic version of this brief was scanned for viruses—and found to contain none—using Trellix Endpoint Security, version 10.7.0.5, updated April 6, 2023.  *See* 3d Cir. L.A.R. 31.1(c).

5.    This brief was filed electronically using the electronic filing system. *See* 3d Cir. L.A.R. 31.1; 3d Cir. L.A.R. Misc. 113.1.

/s/ David D. Lisitza
David D. Lisitza
Securities and Exchange Commission
202-551-5015 (Lisitza)
lisitzad@SEC.gov

Dated: May 15, 2023