No. 23-1779

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

In re Coinbase, Inc., Petitioner

## REPLY IN SUPPORT OF COINBASE, INC.'S
## PETITION FOR WRIT OF MANDAMUS
## TO THE UNITED STATES SECURITIES
## AND EXCHANGE COMMISSION

Reed Brodsky
Lefteri J. Christos
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY  10166
(212) 351-4000

Monica K. Loseman
Nicholas B. Venable
Gibson, Dunn & Crutcher LLP
1801 California Street, Unit 4200
Denver, CO  80202
(303) 298-5700

Eugene Scalia
  *Counsel of Record*
Jonathan C. Bond
Nick Harper
Robert A. Batista
M. Christian Talley
John N. Reed
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
EScalia@gibsondunn.com

*Counsel for Petitioner Coinbase, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION .................................................................................1

ARGUMENT .......................................................................................3

    I.      Mandamus Is Warranted Because The SEC Has Made Up Its Mind To Deny Coinbase's Petition ........................................................3

          A.      The SEC Chair Continues To State Publicly That There Will Be No Rulemaking ..............................................3

          B.      The SEC's Enforcement Actions Confirm That It Is Not Considering Coinbase's Petition ...................................6

          C.      The SEC Has Ignored Other Crypto Industry Petitions For Years ...............................................................7

    II.     The SEC's Delay Would Be Unreasonable Even If The SEC Had Not Made Up Its Mind On Coinbase's Petition ...........................9

          A.      The SEC's Broad Enforcement Campaign On The Same Topics Posed By Coinbase's Rulemaking Petition Renders The Agency's Delay Unreasonable .............................9

          B.      The SEC's Argument That Regulated Entities Should Wait To Be Sued Ignores Its Obligation To Create Significant New Legal Standards Through Rulemaking, Not Enforcement ...................................................11

          C.      The Traditional Factors Confirm That Mandamus Is Warranted .............................................................13

    III.    At A Minimum, The Court Should Retain Jurisdiction ...................16

CONCLUSION ..................................................................................17

CERTIFICATIONS

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re A Cmty. Voice,*
  878 F.3d 779 (9th Cir. 2017) ......................................................15

*Grand Canyon Air Tour Coal. v. FAA,*
  154 F.3d 455 (D.C. Cir. 1998)......................................................10

*Her Majesty the Queen in Right of Ontario v. EPA,*
  912 F.2d 1525 (D.C. Cir. 1990)....................................................10

*In re Int'l Chem. Workers Union,*
  958 F.2d 1144 (D.C. Cir. 1992) ....................................................13

*In re Monroe Commc'ns Corp.,*
  840 F.2d 942 (D.C. Cir. 1988).................................................10, 17

*Nat. Res. Def. Council v. SEC,*
  606 F.2d 1031 (D.C. Cir. 1979)................................................10, 11

*NLRB v. Bell Aerospace Co. Div. of Textron,*
  416 U.S. 267 (1974)......................................................................11

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004)........................................................................10

*Oil, Chem. & Atomic Workers Union v. OSHA,*
  145 F.3d 120 (3d Cir. 1998) ............................................9, 13, 14, 16

*Patel v. INS,*
  638 F.2d 1199 (9th Cir. 1980) ......................................................12

*Pfaff v. DHS,*
  88 F.3d 739 (9th Cir. 1996) ..........................................................11

*Prometheus Radio Project v. FCC,*
  824 F.3d 33 (3d Cir. 2016) ......................................................13, 14

*Pub. Citizen Health Rsch. Grp. v. Brock*,
  823 F.2d 626 (D.C. Cir. 1987).......................................................................13

*Pub. Citizen Health Rsch. Grp. v. Chao*,
  314 F.3d 143 (3d Cir. 2002) ..........................................................................13

*In re Pub. Emps. for Env't Resp.*,
  957 F.3d 267 (D.C. Cir. 2020)..........................................................................9

*Shalala v. Guernsey Mem'l Hosp.*,
  514 U.S. 87 (1995)...........................................................................................10

*Telecomms. Rsch. & Action Ctr. v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984).....................................................................10, 16

*In re United Mine Workers of Am. Int'l Union*,
  190 F.3d 545 (D.C. Cir. 1999).........................................................................16

## OTHER AUTHORITIES

Fin. Mkts. Conf., *Afternoon Keynote, May 15*, YouTube (May 15, 2023),
  bit.ly/3IhOqw3 ..............................................................................................3, 4

Paul Grewal, *We Asked the SEC for Reasonable Crypto Rules for Americans.
  We Got Legal Threats Instead*, Coinbase Blog (Mar. 22, 2023),
  https://bit.ly/43eSNA1 .......................................................................................8

Press Release, SEC, *SEC Nearly Doubles Size of Enforcement's Crypto
  Assets and Cyber Unit* (May 3, 2022), https://bit.ly/3ZMoTle .........................16

Brian Quarmby, *SEC Chair Gensler Claps Back at Coinbase, Says Crypto
  Rules Already Exist*, CoinTelegraph (May 16, 2023),
  https://bit.ly/458mHb2 .......................................................................................1

SEC, *Crypto Assets and Cyber Enforcement Actions* (updated Mar. 9, 2023),
  https://bit.ly/435hO1e .......................................................................................6

SEC, Fiscal Year 2024 Congressional Budget Justification (Mar. 13, 2023),
  https://bit.ly/3WouOwc.....................................................................................5

*Wells Submission on Behalf of Coinbase Global, Inc., and Coinbase, Inc.*,
  Coinbase (Apr. 19, 2023), https://bit.ly/42UaIfN..............................................7

## INTRODUCTION

The SEC does not dispute that mandamus is appropriate if the agency has made up its mind not to engage in the rulemaking requested in Coinbase's petition. That dooms the SEC's arguments against mandamus here. On the same day the SEC told this Court that it has *not* yet made up its mind about Coinbase's rulemaking petition, the SEC Chair stated unequivocally that there will be no rulemaking—because "the rules have already been published."[1] The SEC cites no plans to consider Coinbase's petition on any timeline. Instead, the agency has demonstrated its intent to continue its enforcement campaign against the crypto industry on the very topics raised by Coinbase's petition, while ignoring that petition as it has done for years with other digital-asset-related rulemaking petitions. This real-world conduct belies the SEC's claim that it is "actively considering" Coinbase's petition. Opp. 19.

Even if the SEC had not already made up its mind to deny Coinbase's petition, mandamus still would be necessary. The SEC's delay in deciding whether to conduct a rulemaking is indefensible given its decision to pursue an aggressive, accelerating enforcement campaign regarding the very topics identified in Coinbase's petition. The SEC does not dispute, and thus tacitly concedes, that it has put the industry in a Catch-22: Its Chair has demanded—under threat of enforcement suits seeking

---

[1] Brian Quarmby, *SEC Chair Gensler Claps Back at Coinbase, Says Crypto Rules Already Exist*, CoinTelegraph (May 16, 2023), https://bit.ly/458mHb2.

punitive sanctions—that digital asset developers and platforms "come in and register." Pet. 10. But the SEC refuses to promulgate rules that would enable the industry to know the SEC's standards for determining whether digital assets may be securities or provide a workable path to register when required. That refusal should not evade judicial review. Mandamus is the tailor-made solution.

The SEC's defense of its inaction is equally unavailing—and disconcerting. The SEC blames its failure to act (Opp. 9) on Coinbase's follow-up submissions offering additional constructive ideas—as if each outreach to spur agency action returned the SEC to square one and restarted the clock. The SEC also suggests (Opp. 14) that crypto firms can pursue judicial review of the agency's regulatory approach by waiting for the government to sue them—an untenable prospect for both new and existing businesses. The SEC also does not deny that its current enforcement campaign marks a significant departure from its prior views of the securities laws' applicability to digital assets. Instead, it claims authority to bring enforcement actions against the industry indefinitely for violations of *new* standards never disclosed. New standards of this magnitude must be made through rulemaking—not ad hoc enforcement campaigns.

At a minimum, the Court should retain jurisdiction to monitor the agency's progress toward a decision. That tried-and-true procedure would enable the Court to

ensure that the SEC actually considers Coinbase's petition and decides whether to engage in a rulemaking that the industry and policymakers agree is urgently needed.

## ARGUMENT

### I.    Mandamus Is Warranted Because The SEC Has Made Up Its Mind To Deny Coinbase's Petition

The SEC does not deny that its delay in responding to Coinbase's rulemaking petition would be unreasonable, and that mandamus would be warranted, if the agency has determined not to engage in the rulemaking process Coinbase requested. The SEC vaguely counters that it is still "actively considering its regulatory approaches in this area." Opp. 19. But the SEC's and its Chair's words and actions leave no doubt of the agency's plans. The SEC has no intention of engaging in such a rulemaking in the foreseeable future, and that decision may be unreviewable indefinitely unless the Court grants Coinbase's mandamus petition.

### A.    The SEC Chair Continues To State Publicly That There Will Be No Rulemaking

The Court need look no further than the SEC Chair's many public pronouncements, even congressional testimony, that the SEC will not conduct the rulemaking Coinbase has proposed. *See*, *e.g.*, Pet. 10 & nn.15–16, 12–13 & nn.21–22.[2] To take

---

[2] *See also* Fin. Mkts. Conf., *Afternoon Keynote, May 15*, at 25:22, YouTube (May 15, 2023), bit.ly/3IhOqw3.

just one recent example, on the *same day* that the SEC filed its response brief, the Chair said the following in a public interview:

> Interviewer [Tom Barkin]: Can you comment at all about the dispute with Coinbase, about rules on crypto? Why doesn't the SEC want to publish rules for that market?
>
> Chair Gensler: Because, Tom, the rules have already been published.[3]

That is the latest of many statements by the Chair that no crypto rulemaking is coming. *See* Pet. 10–11.

The SEC does not dispute any of those statements or their plain meaning. Nor does it cite a statement by any other Commissioner that the agency is considering rulemaking or Coinbase's petition. Instead, the agency remarkably seeks to distance itself from public statements by its own Chair, contending that he cannot act or apparently even attest to the Commission's plans or priorities—not even when testifying before Congress. Opp. 19–20.

The SEC's disavowal of what its Chair has said contrasts starkly with how the SEC and its Staff have treated the Chair's public statements in other contexts. In enforcement actions, for example, the Commission has countered fair notice arguments by contending that public statements by the "SEC Chairman repeatedly *gave market participants notice.*" SEC's Mot. to Strike at 10, *SEC v. Ripple Labs Inc.*, No. 20-cv-10832, Dkt. 132 (S.D.N.Y. Apr. 22, 2021) (emphasis added); SEC's Mot.

---

[3] *Id.*

to Strike at 3, *SEC v. Telegram Grp., Inc.*, No. 19-cv-9439, Dkt. 76 (S.D.N.Y. Jan. 15, 2020) (same).

The SEC is talking out of both sides of its mouth, and it is wrong at each end. The Chair's statements *cannot* provide fair notice of the obligations of regulated parties—that is the function of rulemaking, which Coinbase's petition requests. But the SEC's Chair undoubtedly *can* and does speak authoritatively for the agency he leads in describing its regulatory agenda. For example, the Chair alone signed, submitted, and testified about the Commission's 2024 budget, which describes the agency's agenda and indicates no plans to decide Coinbase's petition or engage in the rulemaking Coinbase has requested.[4]

Coinbase's position in this case is not that the Chair's statements constitute "agency action denying Coinbase's rulemaking petition" (Opp. 19)—indeed, formal agency action is what Coinbase seeks to compel here. Rather, it is that the Chair's repeated, unequivocal statements about the Commission's rulemaking plans—uncontradicted by any other Commissioner—conclusively demonstrate that the Commission has no intention of engaging in the rulemaking Coinbase requested. Coinbase simply asks the Court to direct the Commission to say so formally. The SEC's suggestion that the public and this Court should rely on what agency lawyers say in

---

[4] SEC, Fiscal Year 2024 Congressional Budget Justification (Mar. 13, 2023), https://bit.ly/3WouOwc.

a court filing about the agency's agenda, and the Chair's occasional, boilerplate disclaimers that he is "not speaking on behalf of the Commission" (Opp. 20)—but *ignore* what the SEC Chair himself says repeatedly about the agency's agenda even without disclaimer—has no basis in law and defies common sense.

### B.    The SEC's Enforcement Actions Confirm That It Is Not Considering Coinbase's Petition

The SEC's actions confirm what the Chair has said repeatedly: There will be no crypto rulemaking. By the SEC's own estimate, just since the filing of Coinbase's petition in July 2022, the agency has instituted more than 25 digital-asset-related enforcement actions.[5] It has threatened others, including recently in a Wells notice to Coinbase. Pet. 14. These actions presuppose that the agency believes the securities laws are clear and workable as applied to digital assets and that additional rulemaking is unnecessary. And many of these enforcement actions require the Commission to take positions on the central questions in Coinbase's rulemaking petition, such as the standard for identifying whether a digital asset is a security.

The SEC posits that enforcement actions and rulemaking can coexist because the agency "*could* reasonably conclude" that existing regulations are clear enough but that future modifications may be warranted on policy grounds. Opp. 21 (emphasis added). But the SEC avoids saying whether it has reached such a conclusion. And

---

[5] *See* SEC, *Crypto Assets and Cyber Enforcement Actions* (updated Mar. 9, 2023), https://bit.ly/435hO1e.

in any event, as the SEC acknowledges (Opp. 15), the thrust of Coinbase's rulemaking petition is that current regulations are insufficient. The SEC's enforcement activity is necessarily based on the opposite conclusion, which means Coinbase's petition has been denied all but formally.

The SEC's threatened enforcement action against Coinbase dispels any doubt. It is difficult to imagine a more direct rebuke of Coinbase's rulemaking petition than a threatened suit against Coinbase for allegedly listing unspecified digital asset securities based on unspecified legal standards, and failing to register under a registration path that does not yet exist.[6] By effectively—but not yet formally—denying Coinbase's rulemaking petition, the SEC is preventing Coinbase from exercising its right under the Administrative Procedure Act ("APA") to challenge the SEC's decision to forgo rulemaking.

### C.    The SEC Has Ignored Other Crypto Industry Petitions For Years

The SEC's track record further undercuts its vague claim that it is "actively considering its regulatory approaches" and simply needs more time. Opp. 19. The SEC does not dispute that since 2017 it has received five digital-asset-related rulemaking petitions and has acted on *none*. Crypto Council Br. 14; Pet. 10 n.14. The SEC does not suggest that it is actively considering any of these other petitions. It

---

[6] *Wells Submission on Behalf of Coinbase Global, Inc., and Coinbase, Inc.*, Coinbase (Apr. 19, 2023), https://bit.ly/42UaIfN.

offers no excuse for allowing all of those rulemaking petitions to languish, no indication of any decisionmaking activity on those petitions, nor any reason to expect that Coinbase's petition will meet a different fate.

The SEC contends that Coinbase participated in "dozens of meetings to discuss its petition" with the SEC, Opp. 6 (citing Pet. 14), but the SEC misunderstands the reference. Those meetings were not about Coinbase's petition. As Coinbase has explained, Coinbase had meetings with SEC Staff to propose registration frameworks, but the SEC canceled at the eleventh hour the first meeting scheduled for the SEC to provide feedback. Coinbase received a Wells notice just weeks later.[7] That is not "active consideration" of Coinbase's petition.

The SEC separately points to "regulatory measures" it has pursued in the digital assets space. Opp. 17–18, 24. But it does not and cannot plausibly argue that any of them addresses the issues raised in Coinbase's petition or any other crypto industry petition. None of the proposed rules the SEC cites (Opp. 17–18) addresses the questions on which Coinbase seeks clarity—in particular, the standards for determining whether a digital asset may be a security and workable registration models for the industry. The reports, no-action letters, and "guidance" documents cited by the SEC are even further afield. Opp. 24. Most are years old, and some exacerbated

---

[7] Paul Grewal, *We Asked the SEC for Reasonable Crypto Rules for Americans. We Got Legal Threats Instead*, Coinbase Blog (Mar. 22, 2023), https://bit.ly/43eSNA1.

the uncertainty that prompted Coinbase's rulemaking petition. The activities the SEC cites inspire no confidence that it intends to address these issues comprehensively anytime soon. That is why mandamus is necessary here.

## II. The SEC's Delay Would Be Unreasonable Even If The SEC Had Not Made Up Its Mind On Coinbase's Petition

Even if the Court credited the SEC's assertion that it has not yet resolved how to respond to Coinbase's rulemaking petition, its delay still would be unreasonable under settled law. The reasonableness of an agency's delay depends on context, *Oil, Chem. & Atomic Workers Union v. OSHA* ("*OCAWU*"), 145 F.3d 120, 123 (3d Cir. 1998), and "[e]ach case must be analyzed according to its own unique circumstances," *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 273 (D.C. Cir. 2020) (alteration in original). The circumstances here powerfully support mandamus relief.

### A. The SEC's Broad Enforcement Campaign On The Same Topics Posed By Coinbase's Rulemaking Petition Renders The Agency's Delay Unreasonable

The SEC's aggressive pursuit of enforcement actions on the very same topics that Coinbase's rulemaking petition asks the SEC to address makes its nearly year-long failure to respond to the petition unreasonable. This campaign of regulation by enforcement will continue to impose significant and unnecessary costs on an entire industry while denying the industry clear standards, fair notice, and the very path to compliance that the enforcement actions rebuke the industry for not following. This growing enforcement campaign based on undisclosed, new legal standards creates

an urgent need for judicial review of the agency's failure to engage in rulemaking. Mandamus is necessary to make such review available.

The SEC claims that courts regularly deny mandamus "in these circumstances." Opp. 11. But the SEC has not cited, and Coinbase has not found, a single case in which a court has approved even a months-long delay when an agency was actively pursuing enforcement on the same topics of the rulemaking petition—let alone when the agency was threatening suit against the rulemaking petitioner itself.

None of the agency's cited cases speaks to the circumstances in this case. Only two of the SEC's cases address an agency's delay in responding to a rulemaking petition, and neither involved a simultaneous enforcement campaign.[8] The remaining cases do not address an agency's failure to respond to a rulemaking petition, and in some of those cases, the agency had *already* promulgated rules or begun rulemaking.[9] Others did not involve rulemaking at all.[10] And one of the SEC's lead cases states that enforcement alone is *not* appropriate when an agency singles out targets for "special and seemingly unfair treatment" and thereby raises constitutional

---

[8] *See generally Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525 (D.C. Cir. 1990); *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).

[9] *E.g.*, *Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 461, 477 (D.C. Cir. 1998); *Nat. Res. Def. Council v. SEC*, 606 F.2d 1031, 1037–41 (D.C. Cir. 1979); *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 96 (1995).

[10] *E.g.*, *In re Monroe Commc'ns Corp.*, 840 F.2d 942, 944 (D.C. Cir. 1988); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 60–61 (2004).

concerns—just as the SEC's enforcement campaign has done here. *Nat. Res. Def. Council v. SEC*, 606 F.2d 1031, 1045 (D.C. Cir. 1979). The SEC finds no quarter in its own case law. It cites no precedent for allowing agency delay on a rulemaking petition when the central questions are at the heart of the same agency's broad enforcement campaign against an industry.

### B.    The SEC's Argument That Regulated Entities Should Wait To Be Sued Ignores Its Obligation To Create Significant New Legal Standards Through Rulemaking, Not Enforcement

The SEC does not deny that its enforce-first, regulate-later approach should be subject to judicial scrutiny. It contends, however, that Coinbase and others should wait to air "disagreements" with the SEC in defending themselves in enforcement actions if and when they are sued, or participate as amici in other cases. Opp. 14. The end of lengthy enforcement actions seeking punitive sanctions is far too late for the industry to learn the Commission's views about what the law requires, and whether those views are legally defensible.

As the SEC acknowledges, the Supreme Court has held that an agency's "reliance on adjudication" could "amount to an abuse of discretion." Opp. 22 (quoting *NLRB v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 294 (1974)). In particular, when an agency interpreting a statute seeks to take "great leaps forward" and "prospectively pronounce[s] a broad, generally applicable requirement," the agency cannot "circumvent the rulemaking procedures of the APA." *Pfaff v. DHS*, 88 F.3d

739, 748 n.4 (9th Cir. 1996); *Patel v. INS*, 638 F.2d 1199, 1204 (9th Cir. 1980). That is precisely what the SEC is attempting here.

The SEC does not have unlimited authority to regulate the crypto industry, and whatever regulatory authority it does have must be exercised through prospective, workable regulations. *See* Coinbase Amicus Br. 9–11, *SEC v. Wahi*, No. 22-cv-1009, Dkt. 104 (W.D. Wash. Apr. 3, 2023). Yet in many of its crypto enforcement actions and consent orders, including the threatened action against Coinbase, the SEC attempts to circumvent those substantive and procedural limits. Under the APA, that evasion must be subject to judicial review.

To be meaningful, judicial review must be available *before* the SEC brings enforcement actions. Enforcement actions also may never provide any opportunity to challenge the SEC's positions. The SEC settles most cases by threatening *in terrorem* penalties. Chamber of Commerce Br. 10–11. This is true even in cases the SEC cites here where Coinbase has filed amicus briefs. *See*, *e.g.*, *Wahi*, No. 22-cv-1009, Dkt. 103 (W.D. Wash. Apr. 3, 2023) (joint stipulation noting that settlement is being finalized).

The SEC's inaction on Coinbase's rulemaking petition frustrates any timely judicial review of the agency's conduct. Mandamus is necessary to ensure that the agency does not escape judicial review altogether.

### C.    The Traditional Factors Confirm That Mandamus Is Warranted

The traditional factors corroborate that the SEC's delay is unreasonable and the need for the Court's intervention. *OCAWU*, 145 F.3d at 123.

***Length of delay.*** No "*per se* rule" dictates when an agency's delay "is too long." *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992) (per curiam). Context of the delay must be considered. Here, a delay of ten months is unreasonably long not only because the SEC's simultaneous enforcement campaign is imposing significant and immediate harms, but also because—as the SEC tacitly concedes—companies are being prosecuted for failing to trod a regulatory path that the SEC itself refuses to provide.

Moreover, the SEC's delay here is properly measured in years, given the multiple other rulemaking petitions regarding digital assets that it has ignored. This Court has appropriately considered a history of prior delays in evaluating the reasonableness of an agency's latest inaction. *See*, *e.g.*, *Prometheus Radio Project v. FCC*, 824 F.3d 33, 48–49 (3d Cir. 2016); *Pub. Citizen Health Rsch. Grp. v. Chao*, 314 F.3d 143, 151 (3d Cir. 2002). Here, the SEC received a petition for rulemaking regarding digital assets in 2017 and several others since, including Coinbase's. Pet. 10 & n.14; *see supra*, at 7–8. Yet it has undisputedly taken no action on any of them. Even absent the enforcement campaign, this aggregate six-year delay "treads at the very lip of the abyss of unreasonable delay." *Pub. Citizen Health Rsch. Grp.*

*v. Brock*, 823 F.2d 626, 629 (D.C. Cir. 1987) (per curiam) (granting mandamus relief after five-year delay). In full context, the length is unreasonable.

***Harms of delay.*** "The consequences of the agency's delay" also weigh heavily in favor of relief. *Prometheus*, 824 F.3d at 40 (quoting *OCAWU*, 145 F.3d at 123). The SEC concedes that "economic harm" can be "sufficient" to justify mandamus but contends that no "cognizable" economic harm exists here. Opp. 14. That ignores the costly uncertainty its delay creates and the resulting injury to a multitude of stakeholders in a $1 trillion industry. *See, e.g.*, Pet. 20; Chamber of Commerce Br. 5–12; Crypto Council Br. 4–14. Enforcement actions have already cost shareholders millions and led crypto companies to close entire business lines to U.S. customers.

***Agency's justification.*** The SEC cursorily suggests that it needs more time but does not explain why more time is needed. Opp. 15. An agency engaged in substantial enforcement actions on the fundamental issues identified in Coinbase's rulemaking petition should *already* have a reasoned view on whether new rules are needed.

The SEC oddly blames *Coinbase* for the agency's delay, citing Coinbase's efforts to supplement its original rulemaking petition and to propose, at the SEC's request, multiple frameworks for registration paths. Opp. 5–6, 9. That has matters

backwards. Coinbase's continued input and additional suggestions should have facilitated—not stymied—a decision on whether to make rules.

Finally, the SEC argues that its enforcement actions *justify* its delay, because enforcement "*may* yield information useful in the Commission's consideration of the issues raised in Coinbase's petition." Opp. 8–9 (emphasis added). That only underscores that the SEC's choice to regulate through enforcement actions is the root of the problem, not the solution. Coinbase's mandamus petition does not ask this Court to second-guess the agency's enforcement priorities. But the SEC cannot justify its refusal to act on a rulemaking petition by posturing enforcement actions as a substitute for the information-gathering process that the APA requires: notice-and-comment rulemaking.

**Burdens on agency.** Saying yes or no to Coinbase's petition would impose only minimal burdens on the Commission. Denying Coinbase's petition carries a de minimis burden (apart from defending the lawfulness of that decision in court, a burden every agency must shoulder).

Granting Coinbase's petition likewise would impose no substantial burden: The Commission need only initiate a rulemaking process, *see*, *e.g.*, *In re A Cmty. Voice*, 878 F.3d 779, 783 (9th Cir. 2017)—which might entail no more than issuing a concept release, as Coinbase suggested in its petition.

The agency's "need to prioritize in the face of limited resources" does not absolve the delay. *OCAWU*, 145 F.3d at 123. Deciding whether to create rules for a $1 trillion industry over which the SEC seeks to assert expansive jurisdiction should be one of the agency's highest priorities. In fact, the agency identifies no specific priorities of a higher order, and the SEC itself has made crypto a priority in recent years by substantially expanding its crypto *enforcement* team.[11] Rulemaking is also far less costly than enforcement, and clarity would reduce the need for enforcement actions long-term.

## III.    At A Minimum, The Court Should Retain Jurisdiction

For the foregoing reasons, the Court should direct the Commission to respond to Coinbase's rulemaking petition. At a minimum, however, the Court should retain jurisdiction to monitor the SEC's progress toward a response and order the Commission to provide periodic reports. Many courts have adopted that approach in like circumstances. *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 81 (D.C. Cir. 1984); *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 556 (D.C. Cir. 1999) (collecting cases). Here, the Court could require the SEC to explain its delay to date, estimate when it will respond to the petition, and provide regular updates (for example, every three months) on its progress toward responding. That

---

[11] Press Release, SEC, *SEC Nearly Doubles Size of Enforcement's Crypto Assets and Cyber Unit* (May 3, 2022), https://bit.ly/3ZMoTle.

procedure would enable the Court to ensure that further delay does not frustrate judicial review. *See In re Monroe Commc'ns Corp.*, 840 F.2d 942, 947 (D.C. Cir. 1988). If the SEC asserts a need for additional time to act on Coinbase's petition, it should be required to explain and justify that assertion on an ongoing basis.

## CONCLUSION

This Court should issue a writ of mandamus instructing the SEC to respond to Coinbase's rulemaking petition within 7 days. Alternatively, the Court should retain jurisdiction and order the SEC to explain its delay to date, state when it will respond, and provide progress reports to the Court.

Dated: May 22, 2023

Reed Brodsky
Lefteri J. Christos
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
(212) 351-4000

Monica K. Loseman
Nicholas B. Venable
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, Unit 4200
Denver, CO  80202
(303) 298-5700

Respectfully submitted,

/s/ Eugene Scalia
Eugene Scalia (D.C. Bar No. 447524)
 *Counsel of Record*
Jonathan C. Bond
Nick Harper
Robert A. Batista
M. Christian Talley
John N. Reed
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
EScalia@gibsondunn.com

*Counsel for Petitioner Coinbase, Inc.*

17

## CERTIFICATIONS

1.      This Reply complies with the type-volume limitations of Federal Rules of Appellate Procedure 21(d)(1) and 32(a)(7)(B) because it contains 3,858 words, excluding the parts of the Petition exempted by Federal Rules of Appellate Procedure 21(d) and 32(f).

2.      This Reply complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

3.      Pursuant to this Court's Rule 31.1(c), the document has been scanned with version 14 of Symantec Endpoint Protection and is free of viruses.

May 22, 2023                         /s/ Eugene Scalia
                                     Eugene Scalia

                                     *Counsel for Petitioner Coinbase, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May, 2023, I caused the foregoing Reply to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the Court's CM/ECF system.

May 22, 2023

/s/ Eugene Scalia
Eugene Scalia

*Counsel for Petitioner Coinbase, Inc.*