**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Eugene Scalia
+1 202.955.8500
EScalia@gibsondunn.com

June 16, 2023

*VIA CM/ECF*

Patricia S. Dodszuweit, Clerk
Office of the Clerk
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Re:   *In re Coinbase, Inc.*, No. 23-1779 (3d Cir.)

Dear Ms. Dodszuweit:

Pursuant to the Court's Order of June 6, 2023 (Dkt. 28), Petitioner Coinbase, Inc. submits this letter in response to the SEC's letter filed June 13, 2023 (Dkt. 30).

## INTRODUCTION

This Court's June 6 Order summarized a pattern of recent SEC conduct that definitively demonstrates the agency's rejection of Coinbase's rulemaking petition. The smoking-gun evidence is the SEC's now-filed enforcement action against Coinbase itself, demanding compliance with non-existent rules Coinbase's petition urged the Commission to write last summer. The agency could not in good faith bring suit alleging that Coinbase lists certain digital asset securities and so must register with the SEC, if it were seriously entertaining Coinbase's contentions that existing rules

provide neither a feasible registration process nor fair notice of how the SEC assesses whether a digital asset is a security. Moreover, in the days since the Commission sued Coinbase, the Chair has repeatedly stated that the SEC will not make rules regarding digital assets because "the rules and regulations are already clear"[1] and have been "for years."[2] Statements like these—made consistently for months by the head of the agency who sets its regulatory agenda—confirm that the Commission will not engage in rulemaking on these issues, and that a writ of mandamus is required.

When ordered by this Court to address the stark inconsistency between its litigating position and its actions and statements elsewhere, the SEC still offers no straight answers and instead repeats its talking points. Its June 13 letter does not attempt to square its claim that the agency has not yet made up its mind about rulemaking with the Chair's continued public statements that no rulemaking is needed. The agency also never addresses the overlap between its enforcement suit and Coinbase's rulemaking petition. The SEC's observation that an agency can pursue both enforcement and rulemaking ignores the unprecedented nature of its conduct here.

The Commission also dodges this Court's question of how much longer *the agency* needs to make a decision. Instead, it offers a noncommittal prediction by

---

[1] *SEC's Gensler on Suing Binance, Regulating Crypto*, at 5:11 to 6:24, Bloomberg Television (June 6, 2023), bit.ly/3Ji5aEb.

[2] Jeff Cox, *SEC Chair Gensler Doubts the Need for More Digital Currency*, at 00:19, CNBC (June 6, 2023), cnb.cx/3JiCQBt.

"Commission *staff*" that they "*anticipate* being able to make a *recommendation* to the Commission" in 120 days. SEC Letter 2 (emphases added). The SEC's letter offers no timeline for action by the Commission thereafter and no explanation for the proposed timeline for the staff's possible action.

The Court offered the SEC a path that one might have expected it eagerly to embrace—periodic reporting with a deadline for formal action. But instead the agency bristles even at being ordered to update the Court on its progress. *Id.* at 9–10. It strains credulity—and turns government on its head—to suggest that this Court should patiently await the recommendation of agency staff to a strong-willed Commission Chair who has not merely made up his mind, but continues to charge well down the path to irreparably damaging a U.S. public company and an entire industry.

Coinbase agrees with the SEC that mandamus is an "extraordinary" remedy, but these are extraordinary circumstances. Coinbase's right to judicial review of the Commission's all-but-disclosed denial of its rulemaking petition is even more pressing now that Coinbase and others have been sued for failing to conduct a registration that the SEC has yet to enable. As long as the SEC refuses to provide rules for defining digital asset securities and a workable path to registration, industry participants cannot heed the Chair's hollow demand to "come in and register" (Pet. 10), or even discern when such registration is required. An endless barrage of enforcement actions is not a proper or lawful substitute for overdue rulemaking.

The Court should therefore grant Coinbase's mandamus petition without delay. If the Court is inclined to defer action as the Commission proposes (SEC Letter 10), then Coinbase requests that the Court require a progress report within no more than 60 days. In doing so, the Court should order the SEC to report the status of *its* action on Coinbase's petition, not the status of its staff's recommendation. If the agency still has not decided Coinbase's petition at that time, the Court should promptly rule on Coinbase's mandamus petition.

## ARGUMENT

### I. The Court Should Grant Mandamus Now Because The Commission Has Decided Not To Grant Coinbase's Rulemaking Petition And Is Actively Harming The Industry

The Commission's answer to the Court's first question—"whether the SEC has now decided to deny Coinbase's petition," Dkt. 28—pushes the limits of cognitive dissonance. The Commission has now sued Coinbase and others demanding compliance with non-existent rules that Coinbase's rulemaking petition asked the agency to write last summer. Mandamus is required to ensure the Commission's denial of Coinbase's rulemaking petition is formalized and subject to judicial review.

Coinbase's rulemaking petition asked the Commission to provide urgently needed and long-overdue rulemaking concerning the securities laws' application to digital assets. Less than two weeks ago, the SEC brought enforcement actions against both Coinbase and Binance, the world's largest cryptocurrency platforms.

*SEC v. Coinbase, Inc.*, 1:23-cv-04738, Dkt. 1 (S.D.N.Y. June 6, 2023); *SEC v. Binance Holdings Ltd.*, 1:23-cv-01599, Dkt. 1 (D.D.C. June 5, 2023). The suits directly parallel the questions raised in Coinbase's rulemaking petition. Coinbase's petition asked the SEC for standards for determining whether a digital asset may be a security and workable registration models for the industry. Pet. Add. 8–21. The SEC's lawsuits allege that certain digital assets listed by Coinbase and Binance are securities and that the platforms have violated existing rules by failing to register with the SEC. *See, e.g.*, *Coinbase, Inc.*, 1:23-cv-04738, Dkt. 1, ¶¶ 114, 372–88.

The SEC implausibly asserts that there "is no inconsistency" between its commencement of those suits and its purportedly ongoing consideration of Coinbase's rulemaking petition. SEC Letter 6. But the incongruity is obvious. As Coinbase has explained, the SEC could not bring these suits in good faith unless it believed—contrary to the positions taken in Coinbase's rulemaking petition—that the relevant rules already exist regarding which digital assets are securities, and that a workable path to registration exists for Coinbase and Binance. Reply 6–7. If it maintains that belief, then its disposition of Coinbase's petition is already determined.

Recognizing this inconsistency does not mean, as the Commission contends, that an agency must "suspend enforcement of the law every time [it] assess[es] whether to adjust regulatory requirements in light of evolving conditions." SEC Letter 5. No one disputes that an agency may enforce regulations while it also considers

amending them. The conflict here is much more acute and urgent. The Commission cannot credibly claim to maintain an open mind on a rulemaking petition after filing a federal-court enforcement suit contradicting the petition's central premise. *That* conduct is unprecedented. Neither the SEC nor Coinbase has identified *any* case that approved an agency's extended inaction on a rulemaking petition when the agency simultaneously pursued an enforcement action against the rulemaking petitioner, involving the very issues presented in the rulemaking request. Reply 9–11.

The SEC's letter likewise makes no attempt to reconcile its Chair's now routine statements "to both Congress and the public that current regulations are sufficient for digital assets," Dkt. 28, with its litigating position that the jury is still out on Coinbase's petition. In the 10 days *since* the Commission sued Coinbase, the Chair has again publicly stated that the SEC will not make rules regarding digital assets because "the rules and regulations are already clear" and have been "for years." *See supra*, at 2; Pet. 10 & nn.15–16, 12–13 & nn.21–22; Reply 3–6.

The Commission does not even attempt to square the substance of those statements with its position that the agency is actively considering Coinbase's petition. It retreats again to the irrelevant truism that public statements by the Chair "do not—and could not—constitute Commission action denying Coinbase's rulemaking petition." SEC Letter 7. But the parties agree that the Chair cannot deny rulemaking petitions unilaterally. Reply 5. That formal agency action is exactly what Coinbase

6

asks the Court to compel by writ of mandamus here. The Commission still cannot explain why the Chair's statements—including in response to direct questions about the SEC's rulemaking plans (Reply 4)—are not conclusive, or at least highly probative, evidence of the content of the SEC's regulatory agenda.

The SEC's steadfast silence about the Catch-22 it has created for the industry increasingly appears less an inadvertent byproduct of the SEC's regulatory approach, and more the agency's intended outcome. The Commission has known for years of the critical lack of regulatory clarity for the crypto industry. Internal SEC documents brought to light only days ago reveal explicit recognition by agency officials *in 2018* that a "'regulatory gap' . . . exists in this space" that limits the SEC's authority and prevents clarity for the industry.[3] The SEC's demand that digital asset companies "come in and register" despite the agency's willful failure to provide a workable registration framework, let alone standards to know when registration is required, is untenable. Taken together, the Commission's actions and the Chair's statements demonstrate that the agency is not acting in good faith in failing to formally deny Coinbase's petition—a more than sufficient basis for granting mandamus. *See Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984); *Cutler v. Hayes*, 818 F.2d 879, 898 (D.C. Cir. 1987).

---

[3] *SEC v. Ripple Labs Inc.*, No. 1:20-cv-10832, Dkt. 830-46, at 10 (S.D.N.Y. June 13, 2023).

It is now beyond doubt that the SEC has made up its mind. But none of this handcuffs the SEC. Having made up its mind not to pursue rulemaking, the SEC simply must own that decision—and clear the path for judicial review—by formally denying the petition. Judicial review should not be delayed any longer given the SEC's escalating enforcement campaign.

## II. The Commission's Refusal To Say How Much Additional Time It Needs To Act On Coinbase's Petition Confirms That Further Delay Is Futile

Remarkably, the Commission never responds to the Court's second question: "how much additional time *the SEC* requires to *decide* whether to grant or deny that petition." Dkt. 28 (emphases added). Its lawyers say only that Commission "*staff* anticipates being in a position to make a *recommendation* to the Commission regarding th[e] petition within 120 days." SEC Letter 8–9 (emphases added); *accord id.* at 2, 10. The SEC's letter provides no hint of a timeline for the *Commission*—the party before this Court—to make a decision. Its focus on the timing of a *staff*-level recommendation is a quintessentially bureaucratic answer, betraying that (at best) the staff have not completed their internal "process," but the man to whom they report has made up his mind. The staff may do what they like, but the Chair has already made clear that their assistance on this point is not needed. If one thing is clear, it is that Chair Gensler, not agency staff, sets agency priorities.[4]

---

[4] *See, e.g.*, Bruce Love, *As SEC Chairman Pushes His Attorneys, Some Are Choosing the Door*, Nat'l L. J. (July 23, 2021), bit.ly/3PdQaef.

It is unusual for the government to duck a direct question from a federal court. But the SEC's evasive response is revealing. The SEC's failure to say even approximately when its consideration of Coinbase's petition might be complete is in serious tension with its claim that it is actively considering the matter. Even on the most charitable reading—that the SEC has no idea when it will formally act, and that staff will make an internal recommendation in four months—the SEC's response reflects that the agency will not act in the foreseeable future unless required by a writ.

**III.    At A Minimum, The Court Should Order The Commission To Report On Its Action In No More Than 60 Days And Decide The Mandamus Petition Promptly If The Commission Still Has Not Acted At That Time**

The SEC only partially answers the Court's final question: whether the Court should "retain jurisdiction" and either "order periodic reports" or "establish a deadline by which the Court will rule . . . if the SEC has not yet granted or denied the petition for rulemaking." Dkt. 28. But its response offers no sound reason why those alternative remedies are unwarranted, and if anything confirms that the Court's continued supervision is essential if it is not inclined to grant the writ immediately.

As Coinbase has shown, there are at least serious reasons to doubt that the SEC, left to its own devices, will take formal action on Coinbase's rulemaking petition in the foreseeable future. This means that the Commission's certain denial can evade judicial review indefinitely. In the meantime, the agency's enforcement campaign is imposing serious harms on the industry. Reply 14. Periodic reporting, a

deadline by which the Court will rule, or both would ensure that this untenable status quo—and ongoing evasion of judicial review—does not continue indefinitely.

The SEC resists periodic reporting and attempts to distinguish prior decisions where that was required on the ground that its recalcitrance here does not precisely track the facts of those specific cases. SEC Letter 9–10. But the unprecedented nature of the Commission's caprice and the growing harm facing the industry in the meantime provide cause for concern. Although the agency offers to provide a "status report," it does so only on a voluntary basis, on the agency's own terms. *Id.* at 2, 10. The agency's objection is thus not to reporting per se, but rather to being held to account. That is all the more reason why ongoing supervision is necessary.

The SEC does not specifically respond to the Court's question about setting a deadline for ruling on the mandamus petition if the SEC still has not acted. It certainly has not demonstrated any reason why a deadline is inappropriate or infeasible. Nor can it, given the Commission's escalating enforcement campaign.

Coinbase respectfully submits that, if the Court does not rule now on mandamus, it should accept the SEC's offer but reject its arbitrary conditions and set a shorter deadline. The Court should require the SEC to file a report within no more than 60 days of the agency's letter (August 12) and state what action the *Commission* has taken on Coinbase's rulemaking petition. If the agency still has not acted at that time, the Court should rule promptly on Coinbase's mandamus petition.

Respectfully submitted,

*/s/ Eugene Scalia*
Eugene Scalia (D.C. Bar No. 447524)
  *Counsel of Record*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
EScalia@gibsondunn.com

cc: Counsel of record (via CM/ECF)